JOHN STONE, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Cook.*

Objections to the mode of summoning a grand or petit jury, should be taken by a challenge of the array, or by motion to quash the indictment, founded upon affidavit of some irregularity. Such objections cannot be incorporated into the record of a cause, unless raised in one of these ways. Objections of this nature cannot be taken on a motion for a new trial.

Where, upon a trial for murder, a jury was empannelled, and the trial of the cause commenced, and a part of the witnesses examined, an alien having been sworn upon the jury; and the prosecuting attorney, upon learning the fact of alienage, (both he and the Court having been ignorant of that fact,) moved that the juror be withdrawn and discharged, and that a new juror be sworn in his place, which motion was granted: *Held,* that the proceedings were regular. *Held,* also, that the overruling of the motion of the prisoner, to discharge the eleven other jurors, was not erroneous.

The enumeration of causes for summoning a new grand jury, or talesmen, in the act relative to jurois, ought not to be considered as abridging the powers possessed by the Circuit Court, at common law; and an order directing the empannelling of a new grand jury, after the discharge of a former one by the Court, is a proper exercise of the common law powers of the Court.

The Constitution of this State has guarantied a public as well as an impartial trial to persons accused; and the closing of the doors of a court-room, to prevent confusion arising from noise and disturbance, when ingress and egress are not prevented, or for a temporary purpose, where existing circumstances eminently require it to be done, but not for the purpose of excluding any one connected with the trial, does not render the trial private, and ought not to be objected to.

An objection to an indictment for murder, because it does not contain a particular specification of the wounds of which the deceased died, cannot be taken, unless made upon motion to quash; and even then, it seems, it would not be valid.

AT the April term, 1840, of the Circuit Court of Cook county, an indictment for murder was found against John Stone, by a grand jury which had been summoned by order of the Court, after the regular grand jury had been discharged. A trial was had before the Hon. John Pearson and a jury, which had also been summoned after the regular petit jury had been discharged. The defendant below was found guilty by the jury. Thereupon he moved for a new trial, and in arrest of judgment. The Court overruled both motions, and passed sentence of death on the prisoner.

Points relied on by the plaintiff in error:

1. It appears by the record that a regular grand jury was duly summoned by a *venire* issued by the clerk of the County Commissioners' Court, to attend for the whole term, and, having completed their business, the jurors were discharged by the Court, on the 23d day of April, and on the 29th day of April the Court directed the sheriff to summon a new grand jury; that such new grand jury was summoned; and, on the 1st day of May, found the indictment in this case. The Court had no power to order the sheriff to summon this grand jury, and their acts are void; the 9th section of the act

concerning jurors, (1) only authorizes the Court to order the summoning of grand jurors, in cases where the regular jurors fail to appear, or where, by reason of challenges or other causes, there shall not be sufficient to make up the pannel, or where the County Commissioners' Court shall fail to make a selection. It is apparent that this section was never intended to apply to a case where the regular pannel have attended, and have performed their duties, and have all been discharged by the Court. It was only intended to apply to cases where the jurors failed to attend in pursuance of summons; where there is a delinquency on the part of the jurors summoned; or where their number has been reduced by challenges, or where the County Court had failed to perform its duty. It never was intended to vest in a Circuit judge and sheriff the dangerous power of discharging the regular pannel *ad libitum,* and packing a grand jury of the sheriff's own selection, and thus depriving a prisoner of his constitutional right to have his case brought before a grand jury selected by the County Commissioners' Court, according to the law of the land; nor can the prosecution derive any aid from the 11th section of the same act, as that section evidently only applies to individual jurors, after being sworn. In case of absence, sickness, or discharge of such juror, it authorizes the summoning of another to serve in his stead; it has no application to the summoning of a new pannel, after the whole of the regular pannel shall have been discharged by the Court.

2. The petit jury who tried the cause was illegal, and was empannelled without the authority of law. It appears, by the record, that two *venires* were issued by the County Commissioners' Court, and that petit jurors were summoned for the first and second weeks of the term ; that they attended, and were discharged by the Court, at the end of the second week ; that on the second day of May, a new petit jury was summoned by the sheriff, by the order of the Court. The observations made under the first point, will apply to this. This jury was objected to by the defendant, and he objected to being tried by this jury. The objection was overruled, and the defendant excepted. The defendant has been tried and convicted by a jury not selected according to the laws of the land, but selected by the sheriff. If it was necessary for the County Commissioners' Court to issue a second *venire* for a jury, for the second week of the term, it was equally necessary to have issued a *venire* for the third week of the term. The judge had no power to summon a jury of talesmen after he had voluntarily discharged the whole pannel. The jury summoned by the order of the Court, were talesmen, and there cannot be a *tales* except there be a *quales,* that is, one or more regular jurors at the same time. 10 Coke 104–5 ; 1 Chit. Crim. Law 518.

3. The Court erred in ordering the withdrawal of Patterson

(1) R. L. 380–1; Gale's Stat. 397.

Nickalls from the petit jury, after the trial had commenced, and three witnesses had been sworn. If a party has an opportunity of making his challenge, and neglects it, he cannot afterwards make the objection, although the juror is an alien. 8 Barn. and Cres. 417; 4 Dallas 353; Rex v. Edwards, 4 Taunt. 309; Roscoe's Crim. Ev. 177. A juror cannot be challenged after the trial has commenced. The prosecution having selected their jury, were bound to abide the result. Although a prisoner has, by our Court, been allowed to raise the objection of alienage to a juror, after verdict, in *favorem vitæ*, still the prosecution could not make the objection after verdict. The annals of law do not furnish a case of a challenge being allowed by the prosecution to a juror, after trial commenced.

4. When the Court allowed Nickalls to be withdrawn from the jury, the Court erred in not discharging the whole jury. The withdrawal of a juror, in all cases, discharges the whole jury, unless the defendant consents to have the remaining jurors remain. Chitty lays down the law, that, on the withdrawal of a juror, the prisoner must be tried by a fresh jury. Nickalls was the seventh juror sworn, and when his substitute was placed upon the jury, the defendant was allowed only one challenge. His peremptory challenges having been previously exhausted, by this process of withdrawing a juror, and substituting another in his stead, the defendant is deprived of the exercise of the right of challenge secured to him by law. 1 Chit. Crim. Law 629–30, edition of 1819.

5. The Court erred in refusing to grant a new trial upon the causes stated in the motion, and especially upon the cause set forth in the affidavit of McCorristen, that the doors of the Court were locked during the trial.

6. The Court erred in refusing to arrest the judgment. The indictment is insufficient; it does not describe the wounds by which it is alleged that the deceased came to her death.

J. BUTTERFIELD and S. LISLE SMITH, for the plaintiff in error.

A. HUNTINGTON, State's Attorney, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:

The prisoner was indicted, tried, and convicted of the murder of one Lucretia Thompson, at the last April term of the Cook Circuit Court. A writ of error having been allowed, and the record certified and transmitted to this Court, it is now called on to review and revise the proceedings had in the cause.

Before proceeding to the consideration of the questions presented for our examination and decision, it may not be improper to remark, that in performance of the duty required of the prosecuting attorney on the trial, by the 188th section of the Criminal Code of this State, to certify to the correctness of the record, that officer has made a qualified certificate of its accuracy and regularity, by which a portion of it is excluded, and other parts questioned.

Stone *v.* The People.

This qualification and exclusion relate to the recitals of the mode of summoning and returning the *venires* and pannels of the first and second grand and petit jurors ; and the time and manner of their discharge from further service by the Court. That such portions of the record, which have been thus excepted to, were irregularly incorporated into the record, we cannot doubt, because they could alone have been regularly made a part of the record, by having challenged the array, and thus brought those proceedings before the Court ; or by a motion, on affidavit of some irregularity in the proceedings connected with the issuing of the *venires,* or the want of power in the Court to issue· them, and execution by the sheriff, or some defect apparent therein. They formed no more a portion of the proceedings, in this cause, than they did in any other pending at that time in the Circuit Court. We have made these observations, not because the irregularity may be of any direct importance, in the consideration of the questions presented, and connected with the facts in this case, in reference to the want of power in the Circuit Court, to order and direct the summoning the grand jury which found the bill of indictment, and the petit jury which tried the cause, because we shall give the prisoner the full benefit of the consideration of all the questions presented by his counsel, connected therewith, but to prevent a presumption that the practice is sanctioned by this Court. Having premised thus much, we proceed to the consideration of the main points in the case.

It appears that a grand jury, regularly summoned and duly em-pannelled, had been discharged during the term of the Circuit Court, having disposed of the business before it ; that after such discharge, and during the continuance of the term of the Circuit Court, on the 26th day of April, 1840, the murder charged in the indictment was perpetrated. The prisoner having been accused of the crime, arrested, and being in custody, the Circuit Court, on a special application of the attorney for the State, by an order on its minutes, directed the sheriff of the county of Cook to summon another grand jury to pass on the prisoner's case.

That, on the first day of May following, the grand jury presented the indictment against the prisoner. It further appears from the record, that in pursuance of law, the County Commissioners' Court of the county of Cook, had issued and directed to the sheriff of the county, two *venires* for two petit juries, one to serve for the first week of the term, and the other for the second week of the same term ; which were returned duly executed ; that the Court continuing to sit for more than two weeks, had discharged each of the juries, at the expiration of the time limited for their services, and expressed in the *venires.*

That on the 2d day of May, 1840, the Court, by an order on its minutes, directed the sheriff of Cook county to summon a full

petit jury of twenty-four good and lawful men, to appear and serve as petit jurors, at such Court, on the fourth day of May following.

That on the said fourth day of May, the prisoner was arraigned, pleaded not guilty, and was put on his trial. That a jury of twelve was duly sworn, and the trial proceeded in, and several witnesses examined on the part of the prosecution, when the Court, leaving the jury in charge of two sworn officers, under instructions from the Court, to keep them together, and prevent all access to them by other persons, adjourned until the next day. On the reassembling of the Court on the next day, the counsel for the State gave the Court information that Patterson Nickalls, one of the jurors in the cause, was an *alien,* and produced and read a deposition of Nickalls to that effect ; and thereupon asked that Nickalls might be withdrawn from the jury, being declared by law incompetent to serve as a juror, and that another juror might be called and selected in his stead. This application was resisted by the prisoner, but the Court ordered and caused the juror to be withdrawn and discharged from further serving on the jury, and allowed an additional peremptory challenge to the prisoner, and a *tales* juror was thereupon called, selected, and sworn in the place of the juror discharged. The prisoner moved to discharge the eleven jurors after Nickalls was withdrawn, but the motion was overruled and excepted to by prisoner's counsel. He also objected to being tried by the whole jury, but his objection was not allowed. The persons who had been previously examined, were recalled and reëxamined as witnesses, and the trial was recommenced, and proceeded in.

The prisoner's counsel, for the above causes, and because the verdict, as it was alleged, was against the evidence and the instructions of the Court, neither of which appear in the record, moved for a new trial, and for the further cause that while a motion was pending before the Court after conviction, the door of the Court room was locked by the officer in attendance ; all of which grounds were, it appears, deemed insufficient by the Circuit judge, and the motion overruled. The deposition of the officer does not show that the act of closing the door was by the command of the judge, and his supplemental affidavit shows that neither ingress was obstructed, nor egress prevented ; that he held the knob of the door lock in his hand, ready to permit a passage in or out of the Court room ; that the sole object was for the preservation of order in the Court room, where much confusion seems to have prevailed, and that the prisoner had in no way whatever, suffered the least inconvenience therefrom. These, it is believed, constitute the whole facts in the case, upon which the prisoner's counsel rely for a reversal of the judgment of the Circuit Court. Six several grounds have been assigned for error. They are as follows :

1st. The Circuit Court had no power to order the sheriff to

summon the grand jury, which found the indictment, and their act is void.

2d. The petit jury, who tried the cause, were illegally summoned ; and were empannelled without the authority of law.

3d. The Court erred in directing the withdrawal, and ordering the discharge of Nickalls from the petit jury, after the trial had commenced, and witnesses for the prosecution had been sworn.

4th. When Nickalls was withdrawn from the jury, it was error not to discharge the whole jury.

5th. For refusing to grant a new trial ; and particularly on the grounds stated in reference to holding the Court a part of the time with closed doors.

6th. In refusing to arrest the judgment because the indictment does not describe particularly the wounds by which it is alleged the deceased came to her death.

The grounds above stated will be considered in the order they are arranged, and such conclusions stated as the facts, and the law applicable to them, warrant.

While it is not intended to trace the origin and early use of the trial by jury, as it existed in England, nor the sources from whence it is said to have been borrowed, it will not be amiss to consider the mode of summoning grand juries, as practised there. It is understood that a precept was directed to the sheriff of the Court, either in the name of the king, or two or more of the justices of the peace, upon which he returned twenty-four or more persons out of the whole county, selecting a sufficient and equal number out of every hundred, from whom the grand jurors were selected, who were qualified as jurors. When the grand jury were duly returned, charged, and sworn, they usually served the whole session or assizes. But the Court might, in its discretion, command another grand jury to be returned and sworn, and usually do so on two occasions. The first of these occasions is when, before the end of the sessions, the grand jury having brought in all their bills, are discharged by the Court, and after that discharge, either some new offence is committed and the party taken, and brought into gaol ; or when, after the discharge of the grand inquest, some offender is taken, and brought in before the conclusion of the session. (1)

And the other instance of a new grand jury being sworn, it is said, is, when it is to enquire, under the statute, of the concealment of a former inquest, which provision, though it expressly mentions justices of the peace, extends to the King's Bench, and the session of Oyer and Terminer ; and this was formerly the proper mode of punishing the grand jurors if they refused to present such things as were within their charge, and of which they had sufficient evidence ; but this proceeding is no longer in use. (2)

(1) 2 Hale 156 ; J. Williams on Juries 1.    (2) 2 Hale 156 ; 1 Chitty 258.

This practice was adopted so far as relates to the empannelling of a second grand jury, in the case of a commission of a new offence, after the discharge of the first grand jury, in the courts of our State, at the earliest period of its State organization ; and has, it is believed, been practised on more or less since.  But we proceed to consider the statute prescribing the mode of summoning grand jurors, in force since the 1st June, 1827.   The 2d section of that act has made it the duty of the County Commissioners, in each county in which a Circuit Court is holden, to select twenty-three persons, possessing the qualifications enumerated in the law, and as nearly as may be a proportionate number from each township in their respective counties, to serve as grand jurors.

A summons is to be issued to the sheriff, containing the names, and notice to the persons so selected to attend.

By the 14th section of the act, it is declared, that the County Commissioners shall so select the grand and petit jurors, that no one person shall serve on the jury a second time, before all fit persons in the county shall have served in rotation.(1)

From these provisions in the act, as there is nothing prohibitory therein of the power of the Circuit Courts to cause grand jurors to be summoned when deemed necessary, for the administration of the public justice of the county, the act must be considered directory to the commissioners.   It has not taken away the common law powers of the Circuit Courts, which, as we have by express statute adopted the common law of England, they undoubtedly possess.

The Circuit Courts of this State are superior Courts of general jurisdiction, and have power and authority to hear and determine all cases of treason, felonies, crimes, and misdemeanors whatever, that may be committed within the respective counties in which they are holden.(2)

The respective cases enumerated in the 9th section of the act relative to jurors, when the Circuit Court shall have power to order another grand jury, or a particular number of persons to complete the pannel of the jury, to be summoned to supply the omission of the County Court to summon a jury, or to supply the absence of one or more of those summoned, ought not to be considered as abridging the power possessed by the Courts at common law.

It is true, that had these Courts no common law powers, the want of a grant of such power by statute, would then be conclusive against its exercise.   The prisoner is entitled to a speedy public trial, and as he did not object to the trial, because of its speed and promptness, he has but had the right which the Con-

(1) R. L. 379; Gale's Stat. 395 – 6.        (2) R. L. 152; Gale's Stat. 171.

stitution gave of an early trial. An objection might here have been interposed of a serious nature, as to the manner in which this question has been raised in the Court below, but as the counsel for the government has waived all exception as to the form in which the question comes up, we are disposed to give the prisoner the full benefit of a hearing on his exceptions.

By the 153d section of the Criminal Code, " All exceptions which go merely to the form of the indictment, shall be made before trial, and no motion in arrest of judgment, or writ of error shall be sustained, not affecting the real merits of the offence charged in such indictment."

The question should have been presented to the Circuit Court, either on a challenge to the array of the grand jury, or on a motion to have quashed the indictment, for the reason, that the indictment was found by a body not legally assembled. If such had been the fact, this would have been the regular course. It was no cause for granting a new trial, because the remedy proposed, would not reach the error alleged in the order directing the summoning of the grand jury.

After indictment found, no objection of irregularity of empannelling a grand jury can be received as a plea to the indictment.(1)

It is however manifest, that the order directing the summoning and empannelling of the grand jury, was the proper exercise of the common law powers of the Court ; and we perceive no injustice or inconvenience resulting from its exercise.

The second alleged error will be considered.

The same statute, which authorizes and directs the County Commissioners to summon grand jurors, also directs the summoning of petit jurors. It appears that the two juries summoned for the first two weeks of the term of the Court, were respectively discharged, at the expiration of the time of service for which they had been summoned. It appears by the 5th section of the act relative to the holding of the Circuit Courts, passed 13th February, 1835, that the County Commissioners of the several counties, in which the Circuit Courts are allowed to sit two weeks, are authorized to divide the petit jury into two pannels ; and they are to summon them to attend each pannel for one week only. The time of service of the jurors consequently expires with the termination of the week.

Such seems to have been the case on the present occasion, and the Court recognising the rule prescribed by the act, discharged the second jury on the termination of the second week. It is now strongly urged, that the Circuit Court possessed no power to order the sheriff to summon the petit jury which tried the cause ; and it is said the order on the minutes of the Circuit Court, for such pur-

(1) 8 Mass. 289.

pose, was a nullity, and therefore all proceedings connected with the trial of the prisoner are void.

To test the force and accuracy of this proposition, we recur to the 168th section of the Criminal Code of this State, in which it is declared, that it shall not be necessary to isue a *venire* in any criminal case. And in all criminal cases where the pannel of jurors shall be exhausted by challenges or otherwise, and whether any juror has been elected and sworn or not, it shall be competent for the Court to order, on its minutes, a *tales* for any number of jurors, not exceeding twenty-four, returnable *instanter*, out of which persons so ordered to be summoned, it shall be lawful to impannel a jury for the trial of any criminal case; but should the *tales* ordered be insufficient, by reason of challenges or otherwise, to form an impartial jury, the Court may, from time to time, make such further orders, on their minutes, for additional tales-men, returnable *instanter*, until a full jury shall be obtained. It will be perceived that the formality of a regular *venire*, has been dispensed with; and by a liberal construction of this section, it would seem to justify the granting of the order to the sheriff to summon the petit jury.

The regular jurors, who had been summoned for the second week, had been, it is true, discharged by the Court; but the pannel might, perhaps, be said to have been otherwise exhausted than by the challenges, and if so, then the power would be complete, at least by implication, under this section. Without, however, asserting the power under this section, which may be of doubtful authority, after a careful examination of the point, we think there is no difficulty in tracing it clearly to the common law powers of the Court. We have already remarked that we adopted the common law of England,(1) and we have also adopted all statutes, made in aid thereof, of a general nature, and not local to that kingdom, prior to fourth year of the reign of James the First, excepting the 2nd section of the 6th Chapter of 43d Elizabeth, the 8th Chapter 13th Elizabeth, and 9th Chapter 37th Henry the Eighth (2) ; and the 178th section of the Criminal Code declares that all trials for criminal offences, shall be conducted according to the course of the common law, except where that act points out a different course.

It will also be perceived that it was, by express law, the duty of the judge of the Cook Circuit Court to continue to hold the term of the Court until all the business in the Court was disposed of, though more than two weeks had elapsed since its commencement, he not being required to attend and hold a Court in another county. This duty was imperative, and the law required it should be discharged.

It has been shown that the Circuit Courts of the State are superior courts of general original jurisdiction.

They are not only so, but are vested, in criminal cases, with

(1) R. L. 425; Gale's Stat. 440.          (2) See APPENDIX, B.

Stone *v.* The People.

almost exclusive jurisdiction. How then was this duty so imperiously required by law to be performed, to be discharged, if the Court was powerless, and could not order and command, the attendance of a suitable number of jurors for the trial and disposition of causes? Is it not a rational presumption, when the legislative department imposed the performance of this duty, that they conceived the Court possessed ample power to execute it; and that if it was not sufficiently conferred by statute, it did exist at common law?

There is no alternative but the adoption of the proposition, that its common law powers were commensurate to the performance of the duty, or the supposition, that the business required to be disposed of could not be performed; and that a nugatory requisition had been made, which could not be executed. Need it be asked which of the two it is more reasonable to adopt; it must be intended that the jurisdiction and power to try the cause, being not only given, but required by law, the means necessary to the performance of the duties, are to be found in the ordinary common law powers of the Court, to cause a jury to be empannelled. We think such a construction eminently conducive to the administration of public justice, and we do not perceive how injurious consequences are to flow from a sanction of the exercise of the power, any more than in any other case. The possible abuse of a power is no legitimate argument against its existence. It is required to be deposited somewhere, and, of necessity, may possibly be exposed to such consequences. The only remedy is punishment for its corrupt exercise. If it is to prevent a failure of justice, the motive is laudable, though if it be clearly not granted, it certainly should not be exercised. The same objection as to the mode in which it seems the question came up in the Circuit Court, is applicable here. The party should have challenged the array of the jury, or moved to quash the order for want of power in the Court, before trial. The practice in our courts has extensively prevailed as to this mode of summoning juries, and has, it is believed, been almost coeval with the State government. We are not aware that any serious injury has arisen from the exercise of the power. If, however, it is susceptible of abuse, and the streams of justice are likely, at any time, to be polluted by its exercise, the legislative department are entirely competent to provide an adequate remedy, and may interpose a barrier.

On the third point we perceive no error, nor the fourth, which are necessarily so connected as to require to be considered together.

The act relative to grand and petit jurors, already referred to, explicitly prohibits aliens from being jurors. It will not be improper, before referring to some authorities, introduced by the prisoner's counsel, to remark, that the character in which jurors act in the United States, has not been so generally considered, as their position would seem to deserve. The principle, that jurors, in

criminal cases, act as judges of the law and the fact, is distinctly declared in the 178th section of the Criminal Code, and their right to return general verdicts is unquestioned. Hence the importance, and absolute necessity that they should possess the qualifications required by law, in order legally to enter on the discharge of the duties of jurors.

The juror acts in a *quasi* judicial character. He may decide the law differently from the opinion of the judge, and if the prisoner is acquitted, the verdict, which is the judgment of the jury, cannot be reversed or set aside. To constitute him the judge of the law and the fact, it is indispensable, that he be the person declared by the law, to enable him to take upon himself the discharge of the duties of the station. His being sworn cannot confer the qualification, nor make him a citizen ; the act of selection is a nullity, and he stands as though he never was sworn. It is on this principle that the decision was made in Guykowski's case, at the December term, 1838, (1) and the further one, that the party was guilty of no *laches* in not making a challenge to the juror, on the trial, because in that case the fact of alienage was unknown until after the trial. The jurors being required to be not only impartial and qualified according to law, but free from all exception, it seems manifest, that but eleven competent jurors had been sworn in the cause.

It is said that no juror can be challenged after the trial has commenced, and that the Court had no power to discharge or withdraw the juror. This withdrawal of the juror, on the disclosure of his alienage, is not considered a challenge ; its effect, it is true, is the same as though he had been challenged ; but the Court would, at any time after he was called, and before he was sworn, at the suggestion of any one, and on the juror's admission of his alienage, have set him aside, as wholly incompetent.

On discovery of the fact of alienage, it was communicated to the Court, and proof of its truth exhibited by the oath of the juror, which showed his entire disqualification. Now what was the duty of the Court on the developement of the alienage of Nickalls, he being by statute expressly declared incompetent ? Was it not to correct the error, had the suggestion come from any quarter, according to the justice of the case, while the proceedings were *in limine* ? As soon as the error was discovered, the Court was asked, to do what ? Its duty ; and how was that to be best performed ? By going through a trial, which, if it resulted in a verdict of guilty, must be set aside *instanter*, on the application of the prisoner ; for such is the solemnly adjudicated law of this land ; or do what all rational men would suppose should be done, correct the evil, discharge the disqualified person, and perfect the jury ? And how is this perfection to be accomplished ? By doing what it is objected was erroneous ? The remaining eleven jurors, being all competent,

(1) 1 Scam. 476.

Stone v. The People.

and having been all chosen and accepted, as well by the prisoner, as the prosecutor, it would have been irregular to have discharged them, and if it had been done without his consent, would have been, we conceive, cause of error; because it would have deprived the prisoner of a right secured to him, and which had been consummated under the law. The Court corrected the error to the extent occurring, and could go no further. The case is *sui generis,* and should be decided on principles of analogy. We have been referred to authorities which are admitted to be the rule in the British courts, and if the facts in this case were of the nature which marked the cases that have been decided there, and in like cases in our own courts, we should have no difficulty in coming to the same results on the present occasion. The rule, at common law, undoubtedly is, where a juror is withdrawn by reason of sickness, or any other cause, or where the death of any one ensues during the trial, the remaining jurors are to be discharged, and the prisoner, unless he consents to have the eleven remain, must be tried by another jury. And why is it so? Because the jury has been complete; the whole twelve were competent and qualified jurors. In the cases cited the remaining eleven jurors have been discharged, because one of the competent parts of the jury has been unable to perform its functions; not by an act of the parties, or of the Court, but by physical causes beyond the control of both. Not so in the present case. For want of sufficient caution, an error has occurred. Now shall it be said the Court possessed no power to correct the error, without prejudice to either party; but that in correcting it, another shall be committed? Not so. Why is a court, for the ends of justice, and where manifest necessity exists, for the act, authorized to discharge a jury? And if a whole jury may, in such case, be discharged, why not set aside a person improperly selected and sworn? No injustice has been done; no law has been violated. The rights of the prisoner have not been infringed; the course is agreeable to justice, and we can perceive no wrong in the mode adopted. If a doubt could, however, remain on this point, it is definitely and conclusively settled by the 11th section of the act referred to, relative to jurors. (1) "In case of the death, sickness, or non-attendance of any grand or petit juror, after he shall have been sworn upon the jury, or where any such juror as aforesaid, after being sworn as aforesaid, shall, for any reasonable cause, be dismissed or discharged, it shall be lawful for the Court to cause others, if necessary, to be summoned, and sworn in his or their stead."

On fifth ground it is to be remarked, that there is no question that the Constitution of the State has guarantied a public, as well as an impartial trial; but the causes stated in the deposition do not show

(1) R. L. 381; Gale's Stat. 397.

that the trial was not public. We should infer from the fact stated in the depositions, that some noise and disturbance prevailed in the Court room, and that in order to avoid the confusion which might have arisen therefrom, the officer caused the doors to be locked. No inconvenience appears to have arisen from the course pursued, and we cannot well see how any could have occurred.

We have no doubt, however, that the doors may be closed for a temporary purpose, where existing circumstances eminently require it to be done ; but not for the purpose of excluding any one connected with the trial. The record shows the fact, that it occurred while the motion for arresting the judgment was pending, under consideration and discussion ; and it was consequently after the verdict had been rendered, and trial by jury terminated. We see no cause of error here. The instructions and evidence given in the cause do not appear in the record, and consequently we have no means of deciding the point presented, whether the verdict was against the evidence or the instructions of the judge.

On the sixth and last ground, it is only necessary to remark, that the objection to the want of a minute specification of the extent and character of the wounds, charged in the indictment to have been inflicted, is purely technical. If it could have prevailed at all, which we do not believe, it should have been urged on a motion to quash the indictment, as provided in the 153d section of the Criminal Code already quoted.

It is to be further remarked, that with a view to dispense with unnecessary technicalities, and prolixity in indictments, the 152d section of the same code, has declared, " That every indictment, or accusation of the Grand Jury shall be deemed sufficiently technical, and correct, which states the offence in the terms and language of this Code, or so plainly that the nature of the offence may be easily understood by the jury. The objection cannot prevail.

We are therefore of opinion, that there is no error in the record, proceedings, and judgment of the Circuit Court of Cook county in this cause, and that the same should be, and hereby is, affirmed with costs. And this Court proceeding under and in conformity to the 188th section of " *The Act relative to Criminal Jurisprudence,*" of this State, do order, adjudge, and decree, that the original sentence of death, adjudged by the Circuit Court of the county of Cook, to be executed on the person of John Stone, the prisoner in this cause, and which by the judgment and consideration of the said Court, was ordered to be executed on the said John Stone, on the twenty-ninth day of May now last past, but which has been respited and superseded, be executed by the sheriff of said county of Cook ; and that he cause the said John Stone, on Friday, the tenth day of July, in the year one thousand eight hundred and forty, to be taken from the prison of said county of Cook, where he is now confined, to the place of execution, and there between the hours of twelve

meridian, and four post meridian, of that day, he cause the said John Stone to be hanged by the neck until he be dead ; and that therefrom he cause the body of the said John Stone to be delivered over to the surgeons named in the record and judgment of the said Cook Circuit Court, for dissection, in pursuance of the statute in such cases made and provided ; and for so doing, this order and decree shall be his sufficient warrant.

*Judgment affirmed.*

*Note.* Though alienage is good cause of challenge to a juror, Borst *v.* Beecker, 6 Johns. 332; yet advantage cannot be taken of the circumstance after verdict. Hollingsworth *v.* Duane, 4 Dall. 353; State *v.* Quarrel, 2 Bay 150; Siller *v.* Cooper, 4 Bibb. 90.