THE STATE OF IOWA, Appellee, v. H. H. DISBROW, Appellant.

**Indictment**: OBJECTION TO GRAND JURY. Where an indictment has been set aside after the grand jury summoned for that term has been discharged, the court may order all of the grand jurors drawn for the current year to appear forthwith and draw therefrom a new jury to whom the charge against de-

fendant may be submitted, rather than reconvene the jury formerly empanneled for the term, and neither a motion to set aside an indictment found by them, nor in arrest of judgment upon conviction thereunder, will lie.

Embezzlement: INDICTMENT: VARIANCE. Proof that a guardian received his ward's money and loaned it, taking a note as evidence thereof, which he afterward converted to his own use, will support an indictment charging the embezzlement of the money.

Embezzlement: LIMITATION OF PROSECUTION. A conviction for embezzlement cannot be had for an offense not committed within three years from the date of the indictment under which the defendant is tried, and the fact that a prior indictment was returned, but set aside, will not extend the period of limitation.

Embezzlement: PROOF OF OTHER SIMILAR ACTS. On a prosecution of a guardian for embezzlement, evidence of his appointment as guardian of other persons and his failure to account to them, is inadmissible on the question of fraudulent intent, as his failure to account neither proves nor implies embezzlement under Code Section 4842.

*Appeal from Van Buren District Court.*— HON. F. W. EICHELBERGER, Judge.

TUESDAY, MARCH 6, 1906.

THE defendant, having been convicted of the crime of larceny by embezzlement, appeals.— *Reversed.*

*Mitchell & Hunter,* for appellant.

*C. W. Mullan,* Attorney General, and *L. De Graff,* Assistant Attorney General, for the State.

WEAVER, J.— The indictment which was presented by the grand jury January 19, 1905, charges that defendant on October 16, 1896, being the guardian of one B. F. Smith, received into his possession by virtue of said trust the sum of $723.78, and afterward, on the 23d day of February, 1904, did embezzle and unlawfully and feloniously convert

to his own use the said sum of money so received. Upon this indictment the defendant was found guilty and sentenced to a term of imprisonment in the penitentiary.

I.   A motion to set aside the indictment on account of alleged irregularity in impaneling the grand jury was denied, and upon this ruling error is assigned. A motion in arrest of judgment on the same ground was also overruled. It appears that an indictment upon the same charge had been returned against the defendant at a prior term of court, and that upon objection raised thereto at the January, 1905, term it was set aside.   At the time this ruling was made the grand jury impaneled for the term had already been discharged, and the court, instead of continuing the case until the next term or recalling the same grand jury, which had recently been discharged, ordered all the grand jurors who had been drawn for service in that county for the current year to be summoned to appear forthwith, and when they had assembled a new grand jury was drawn and impaneled from their number and the charge against the appellant submitted to their consideration.   The point made is that, if the court wished to have the appellant's case immediately considered, it should have recalled the grand jury which had been selected and impaneled at the beginning of the term, nowithstanding their discharge and the return of the members to their several homes, and that the drawing of a new panel was without the authority of law.   The statute (Code, section 5240) provides that the grand jurors of a county shall appear on the second day of each term of court, and from their number the proper number shall be drawn, who shall constitute the grand jury for that term.   While this is true, and the court may not arbitrarily discharge one grand jury and summon another, it does not follow that when one grand jury has been regularly and properly discharged, and an exigency arises later in the term for further service of that nature, the court may not call in the entire body of members and

1. INDICTMENT: objection to grand jury.

impanel a new jury, instead of recalling the discharged panel. The point made is a technical one. The appellant expressly states that he makes no objection to any individual juror, and there is no suggestion that he has in fact suffered or could suffer any prejudice by reason of the ruling of which he complains.

Under somewhat similar circumstances this court has held that the empaneling of a new grand jury is not error. *State v. Hughes,* 58 Iowa, 165; *State v. Hart,* 67 Iowa, 142. See also, as bearing on the question, *Findley v. People,* 1 Mich. 234; *Stone v. People,* 3 Ill. 326; *State v. Champeau,* 52 Vt. 313 (36 Am. Rep. 754); *Bird v. State,* 14 Ga. 43; *State v. Wilcox,* 104 N. C. 847 (10 S. E. 453); *State v. King,* 9 Mont. 445 (24 Pac. 265); *State v. Meyers,* 51 Ind. 145; *State v. Peterson,* 61 Minn. 73 (63 N. W. 171, 28 L. R. A. 324); *State v. Harris,* 73 Mo. 287; *Chartz v. Territory,* 4 Ariz. 4 (32 Pac. 166); *Freel v. State,* 21 Ark. 212; *Mackey v. People,* 2 Colo. 13. The law relating to the drawing and selecting of grand jurors need not be followed with technical or literal **strictness.** A substantial compliance is all that is required. See *State v. Ansaleme,* 15 Iowa, 44; *State v. Edgerton,* 100 Iowa, 65, and cases there cited.

We think that neither course, the recalling of the panel which had been discharged or the drawing of a new panel from the entire venire for the current year, can be considered a substantial departure from the forms provided by the statute, and there can be no presumption of prejudice arising from the adoption of either by the trial court. There appears to be no statute provision expressly authorizing the recalling or reorganizing of a grand jury for the consideration of matters arising after the panel organized at the beginning of the term has been regularly discharged, but we think it cannot be doubted that such authority may fairly be implied from the general provisons, if, indeed, it be not within the common-law powers of the court. *Stone v. Peo-*

*ple,* 3 Ill. 326.   When an exigency calling for the exercise
of this power has arisen, and the court, finding that the panel
originally organized for the term has been duly discharged
and its members dispersed to their several homes, we are
disposed to hold, as already intimated, an order calling for
the appearance of the entire membership, and the drawing
therefrom of the requisite number of duly qualified persons
to whom the matter in hand shall be submitted, is a sub-
stantial compliance with the law, and that a motion to set
aside the indictment so returned, or in arrest of judgment
upon a verdict of guilty thereunder, will not lie.

II.   The evidence tends to show that at the time of his
appointment as guardian, the appellant received on account
of his ward the sum of $879.29, and on January 26, 1901,
made a report to the court charging himself

2. EMBEZZLE-
MENT: indict-
ment: variance.

with the amount of a loan to one Irish and
interest thereon to the amount of $1,054.   On
March 4, 1903, he again reported charging himself with the
balance of $1,054 shown by his last report, with an item of
interest bringing the total charge up to $1,117.24, against
which he claimed credits for various items reducing the bal-
ance due his ward to $723.78.   On February 7, 1904, ap-
pellant was, by order of court, removed as guardian and a
successor appointed with whom he was ordered to make set-
tlement and accounting of his trust.   This order he has
failed to comply with, and has neither paid nor accounted
for the moneys so placed in his hands.

It is argued by counsel in his behalf that he cannot be
convicted under the record made, because the indictment
charges the embezzlement of money while the proof shows
that if any embezzlement was committed it was of promis-
sory notes.   Let us first look to the facts as disclosed by the
evidence.   It is not denied that appellant received the trust
fund in money, but the record tends to show that $800 of
this sum was within a short time loaned to one S. E. Irish.
On February 27, 1897, he borrowed from the Iowa National

Bank of Ottumwa $400 for his own use, and deposited as collateral thereto the note of Mr. Irish, with other paper owned by the appellant individually. On or about August 28, 1901, Mr. Irish appears to have paid off the appellant's said note of $400 to the bank and received from the bank the collateral deposited with it, including his own note of $800 above mentioned. Thereupon, on August 31, 1901, Irish and appellant had a settlement by which Irish received credit upon the $800 for the $400 which he had paid to the bank for the appellant, leaving a balance of principal and interest still unpaid in the sum of $651.35. This balance was settled by a check given the appellant of $351.35, and a new note signed by Irish and his wife for $300. The amount of the check aforesaid, with $2.65 in cash, making a total of $354, appellant deposited in the bank to his credit as guardian. On the same day he checked out of this account $81.92 in payment of delinquent taxes assessed to him as guardian, and on September 10, 1901, he checked out the balance of $272.08 and used the money in payment of his personal obligations. Concerning the note of Irish and his wife for $300 it appears that appellant, soon after receiving it, put it up as collateral to some of his personal obligations at the bank, and thereafter, on March 6, 1902, sold or discounted it to the bank, and the moneys so obtained were also converted to his own use. As the statute of limitations has an important bearing on this case, we will first turn our attention to the one item against which the bar cannot, under any theory, be held to have arisen. As we have already noted, the indictment herein was returned January 19, 1905, and the date when the note for $300 was discounted and the moneys so received converted by appellant was within less than three years prior thereto.

It is argued that appellant, holding the note in his capacity as guardian, had no right or authority, without the order or directon of the court, to sell or discount the note, and therefore the crime, if any was committed, consisted in

its unlawful disposal or conversion, and not in the conversion of the moneys realized thereon. We may concede as the general proposition of counsel that, if the bailee of chattels with authority to sell fraudulently sells the same and converts the proceeds to his own use, he is guilty of embezzlement of the property sold or of its proceeds, according as the fraudulent purpose was formed in his mind before or after the sale was consummated. But not every wrongful conversion, even by a bailee or trustee without legal authority to sell, is an embezzlement. ' To constitute that crime the conversion must be actuated by the fraudulent purpose to deprive the owner of his property. For instance, if this guardian, having collected $300 on a note held for his ward, and having at the same time a like sum to his own credit in the bank, should without any fraudulent purpose use the trust money in his hands for private purposes, and then go at once to the bank and have the same amount transferred from his personal to his trust account, he would perhaps be chargeable with a technical conversion, but would not be guilty of embezzlement. So, too, if, holding a note for his ward which is of doubtful value, he meets an opportunity to sell it for the full sum of principal and interest, and makes the sale in good faith and for his ward's benefit, though without any order or direction of the court, he may have exceeded the letter of his legal authority, but he has committed no crime.

Now, if, in the first of these hypothetical cases, the guardian on the following day conceives and carries out a fraudulent purpose to convert the money in the bank to his own use, and is indicted therefor, he cannot successfully ·defend on the theory that, if there was any embezzlement, it ·was the use of the specific money collected, and not the ·use of the money which had been substituted for it in the bank. *People v. Bringard,* 39 Mich. 22 (33 Am. Rep. 344). And in the other case, if the guardian should fraudulently convert to his own use the money for which he sold the note held

for his ward, we think he could be heard to say that the embezzlement, if any, was not of the money, but of the note.

It is unnecessary for us to go into the question whether in any case an indictment charging an embezzlement of money may be upheld by proof of the conversion of a promissory note. In the case before us the appellant guardian received the money. If he let it out upon interest, the promissory notes thus received represented money. In the due course of his business it was his duty to collect and safely keep the funds thus invested. When called upon to surrender his trust, it was incumbent upon him to produce the money or its approved representative. If by a fraudulent abuse of his trust the money which he received for his ward is dissipated and lost, it would seem to be immaterial whether it was lost in the very form in which it came into his hands or after he had changed it into the form of moneyed securities. In any event, the loss or embezzlement is to all intents and purposes the loss and embezzlement of the money intrusted to his keeping. Appellant held the notes as the means or evidence by which he could collect or obtain the actual money for his ward, and if he made use of the power or opportunity thus intrusted to him to get the money into his hands and fraudulently applied it to his own use the proof of that fact sufficiently sustained the charge made in the indictment. It was money which he received and money for which he must account. *State v. Brooks,* 85 Iowa, 366.

III. The indictment appears to have been framed with the purpose of charging an offense under Code, section 4842, which enumerates several classes of employés, agents, and bailees whose fraudulent conversion of money or property intrusted to their keeping is made punishable as embezzlement. This section does not expressly mention guardians as being subject to the penalties there provided, and whether they are fairly included within the general terms of the statute is a question on which the authorities are not in unison. *Myers v. State,* 4 Ohio Cir. Ct. R. 570; *State v.*

*Henry,* 69 Tenn. 720; *State v. Meyer,* 23 Wkly. Law. Bul. (Ohio) 251; *Com. v. Butterick,* 100 Mass. 1 (97 Am. Dec. 65); *State v. Gillis,* 75 Miss. 331 (24 South. 25); *State v. Whitehouse,* 95 Me. 179 (49 Atl. 869). The case as presented does not require us to construe the statute in this respect, and is one of too much importance to be definitely decided without the assistance of argument by counsel upon both sides.

The same section of the statute also provides that, where the fraudulent conversion or embezzlement of money is accomplished by a series of wrongful acts done in course of the same employment, they are to be considered as if all were done at the same time. Whether this clause is applicable to a charge of the nature of the one here involved, and, if so, its effect upon the application of the statute of limitations is by no means clear; but, as said with reference to the question last referred to, it is probably not essential to the disposition of this appeal that we stop to consider it. The trial court adopted the theory that each act of the accused in fraudulently converting the trust fund or any part of it to his own use constituted an independent offense, and that as to each the statute of limitations began to run at the date of the act. This is also the theory of the appellant, and must therefore be regarded as the law of the case for the purposes of this appeal.

It will be recalled from the preliminary statement of facts that prior to the presentation of the indictment herein another indictment had been returned against appellant on the same charge and set aside as defective and the matter resubmitted to the grand jury. The date of said prior indictment was September 14, 1904. Now, as the evidence on the trial showed quite conclusively that appellant converted the trust fund to his own use in several items or amounts and at various times extending over a period of about six years from 1896 to 1902, and as the statutory limit for criminal actions of this

3. EMBEZZLE-
MENT: limita-
tion of prosecu-
tion.

nature is but three years, it was a matter of importance to the appellant that the jury should be correctly instructed as to the period within which he could be held criminally liable for his acts. The instructions given directed the jury that such liability included all fraudulent conversions by the accused within three years prior to the return of the first indictment September 14, 1904. This ruling is assigned as error, it being the contention of the appellant that he can only be held liable for such embezzlements, if any, as were committed by him within three years prior to the date of the indictment on which he was tried, January 19, 1905. We are of the opinion that this contention must be sustained. Limitation of the time beyond which an action will not be maintained is purely a matter of statutory enactment, and precedents cited from other jurisdictions are of little assistance, unless it also appears that the statutes there considered are of like form and effect with our own. Our statute (Code, section 5165) provides that an indictment in this class of cases must " be found within three years after the commission of the offense and not afterwards." In some of our sister States the corresponding provision is that " prosecution must be begun " within the stated limit. The beginning of a prosecution and a finding of an indictment are not equivalent expressions. A prosecution is begun when an information is filed before a magistrate and a warrant issued for the defendant's immediate arrest. An indictment is found when it is presented by the grand jury in due form in open court and filed with the clerk. This distinction has been widely, though perhaps not universally, recognized. *Com. v. Woodward,* 1 Chest. Co. Rep. (Pa.) 102; *Boughn v. State,* 44 Neb. 889 (62 N. W. 1094); *Com. v. Bunn* (Pa.) 1 Leg. Op. 114; *United States v. Slacum,* Fed. Cas. No. 16,311; *Ex parte Lacey* (Okl.) (37 Pac. 1095); *Com. v. Hass.* 57 Pa. 443.

The language of the statute is too clear for construction, and, without reference to the time when the proceed-

ings were begun, the indictment must be found within three years from the commission of the offense, and not afterward.

It is said, however, on the part of the State, that even if this be true it is settled law that " the time during which an indictment which has been quashed or set aside was pending is not, in case a new indictment is found, computed as a part of the period of limitation, provided the same offense and the same offender are charged in both indictments." We find this general proposition stated in some of the text-books and cyclopedias; but reference to the cases relied upon, so far as we have been able to examine them, reveals in each instance that the decision turns upon a local statute expressly or impliedly providing that upon the setting aside of an indictment or the entry of a *nol. pros.* the right of the State to present a new indictment within a limited time shall not be prejudiced. *Swalley v. People,* 116 Ill. 247 (4 N. E. Rep. 379); *Slate v. Dunham,* 9 Ala. 76; *Stafford v. State,* 59 Ark. 415 (27 S. W. Rep. 495); *State v. Child,* 44 Kan. 420 (24 Pac. Rep. 952); *State v. Hailey,* 51 N. C. 42.

It seems to us a reasonable and just proposition that, in the absence of any statute saving such right to the State, the running of the statute of limitations ought not to be interrupted or suspended by the return and pendency of an indictment upon which no valid conviction or judgment can be founded. Such an indictment is no indictment. It is a nullity, and while it may serve as authority for the trial court to continue the defendant in custody and cause a resubmission of the case to the grand jury, such order is in effect the mere direction that the original inquiry shall be resumed as if the defective indictment had never been voted or returned into court. It is no more than a restoration of the case to the status it occupied at the time it was originally submitted. The grand jury takes it up anew, and may present or ignore the bill, without any reference whatever to the fact that one indictment has been presented and set aside. Cases are not wanting which tend to sustain this view.

*United States v. Ballard,* Fed. Cas. No. 14,507; *State v. Curtis,* 30 La. Ann. 1166; *Com. v. Keger,* 62 Ky. 240; *Newport News & M. V. R. R. Co. v. Commonwealth,* 14 Ky. Law. Rep. 197. But, without reference to the precedents from other States, our statute admits of no other conclusion than the one we have indicated.

IV. On the trial to the jury the State was allowed, over appellants objection, to put in evidence the record of his appointment as guardian of one Neal Luke and as guardian

4. Embezzlement: proof of other similar acts.

of one Anna Beer, together with the bond given by said appellant in each case, his reports to the court in respect to each of said trusts, and the amount of money held by him in each of them, and was then further permitted to prove by the said Neal Luke and Anna Beer that upon arriving at their majority and demanding the moneys due them defendant did not or could not pay them, that he had never in fact paid the debts, but that the same had been satisfied by the sureties on his bond. This evidence was admitted on the theory that it was competent to be considered upon the question " whether, if defendant converted the money of his ward, Smith, he did so designedly and with intent to defraud said Smith out of such money." In this there was error. It will be conceded that there is authority for the proposition that " for the purpose of showing intent it is proper to prove other acts of embezzlement " (1 McClains Crim. Law, section 642, and cases there cited), though we do not affirm or deny the soundness of the rule as stated; but the most that was shown in respect to appellant's guardianship of Luke and Beers was that he had failed to account for the trust funds and we regard it clear that a mere failure to account neither proves nor implies embezzlement, under Code, section 4842. A different rule applies under section 4840, which defines embezzlement by a public officer and expressly provides that a failure to account for the public funds in his hands upon proper demand therefor shall be sufficient proof of the offense. The conversion by a

guardian or trustee of a trust fund was not a crime at common law, and if it is now a crime it is so only because and to the extent it is so designated by the statute.   The section relied upon makes the criminal character of the act to depend, not upon the failure to account, but upon the existence of a fraudulent intent on the part of the accused to deprive the beneficiary of his property.   Failure to account may have many other reasonable explanations than corrupt intent, and in itself such a failure in one case is without any probative force to establish a fraudulent intent on appellant's part with respect to another and altogether distinct transaction concerning another and distinct trust.   The testimony should have been excluded.

Other questions argued are not likely to arise on a retrial and we need not discuss them.   For the reasons stated, the case must be remanded to the district court for a new trial.— *Reversed.*