STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. HARRY M. RHODES, EVA SERIN, JEROME SERIN AND ANDREW SERIN, DEFENDANTS-RESPONDENTS.

Argued January 19, 1953—Decided March 2, 1953.

*Mr. Eugene T. Urbaniak,* Deputy Attorney-General, argued the cause for appellant (*Mr. Adrien B. Hommell,* Sussex County Prosecutor, attorney).

*Mr. David Cohn* argued the cause for respondents Eva Serin, Jerome Serin and Andrew Serin.

The opinion of the court was delivered by

JACOBS, J. This is an appeal, certified by this Court on its own motion, from an order dismissing an indictment against the defendants Harry M. Rhodes, Eva Serin, Jerome Serin and Andrew Serin.

The indictment charged the defendants with conspiracy to cheat and defraud in violation of *R. S.* 2:119–1 (*N. J. S.* 2A:98–1) and set forth the following: The defendants were president, vice-president, secretary and general manager of Lee-Jay Metal Products, Inc., a corporation engaged in manufacturing screw shells and metal stampings in the Borough of Franklin, County of Sussex. On or about December 1, 1948 the corporation entered into an agreement with Martha M. Palmer of the Township of Sparta, County of Sussex, whereby she undertook to make loans to the corporation from time to time on the security of accounts receivable, it being agreed that payments received on each account receivable to the aggregate amount of the loan thereon would be deposited by the corporation in the bank account of Martha M. Palmer in the First National Bank of Butler, New Jersey. At the same time the corporation assigned to Martha M. Palmer accounts receivable specifically set forth in the indictment. Payments were received on these accounts receivable but the

defendants did not deposit them in Martha M. Palmer's bank account and used and expended them in the business of the corporation which had no money on hand or on deposit when a custodial receiver was appointed on December 1, 1949. The indictment contained allegations that the defendants had unlawfully and corruptly conspired in the County of Sussex to use, as aforementioned, payments received on the assigned account, for the purpose of cheating and defrauding Martha M. Palmer, and had knowingly received and expended such payments, the first payment having been received on March 24, 1949 and the last on November 18, 1949. A motion to dismiss the indictment was granted by the County Court on the ground that its prosecution had been barred by the statute of limitations (*R. S.* 2:183–2 (*N. J. S.* 2A:159–2)), and the State has duly appealed. *Rule* 2:5–3(*b*)(*7*).

The last overt act set forth in the indictment occurred on November 18, 1949, and under *R. S.* 2:183–2 the prosecution was barred if the indictment was not found within two years thereafter. *State v. Ellenstein,* 121 *N. J. L.* 304, 317 (*Sup. Ct.* 1938) ; *State v. Unsworth,* 85 *N. J. L.* 237, 242 (*E. & A.* 1913) ; *Fiswick v. United States,* 329 *U. S.* 211, 216, 67 *S. Ct.* 224, 91 *L. Ed.* 196, 200 (1946). The indictment was voted by the grand jury on Friday, November 16, 1951 but was not returned to the court on that day, apparently because the Sussex County judge was absent, on assignment to Hudson County. But *cf. Rule* 2:4–7. The indictment was returned to the court on Monday, November 19, 1951; the defendants contend that the preceding day, Sunday, November 18, was the last day of the two-year statutory period and that the indictment's return on the following day was beyond the prescribed time limitation.

The State's first contention is that the indictment was found on November 16, but we consider that it lacks merit. The grand jury's action on that day was in no sense final and could have been changed at any time prior to the return of the indictment. The return in open court constitutes the first objective act which renders the indictment

effective under circumstances calculated to protect the proper legal interests of both the State and the defendant. See *Rule* 2:4–7; *State v. Unsworth, supra*, at *p.* 238. *Cf. State v. Magrath*, 44 *N. J. L.* 227, 229 (*Sup. Ct.* 1882); *State v. Ellison*, 14 *N. J. Misc.* 635, 639 (*Sup. Ct.* 1936); *State v. Davis*, 107 *N. J. L.* 199, 203 (*Sup. Ct.* 1930). A contrary view would present evident dangers and enable impairment of the public policy underlying the statutory provisions prescribing periods of limitation in criminal cases. The State stresses that *R. S.* 2:183–2 uses the term "found" but we are satisfied that there was no legislative purpose to attach legal significance to the action of the grand jury independent of the return of the indictment into court. In common parlance, an indictment is said to be found when it has been voted upon and properly returned to the court, and there are judicial decisions to that effect. See *State v. Peloquin*, 106 *Me.* 358, 76 *A.* 888 (*Sup. Jud. Ct.* 1910); *State v. Disbrow*, 130 *Iowa* 19, 106 *N. W.* 263, 266 (*Sup. Ct.* 1906); *People v. Herrmans*, 69 *Misc.* 303, 125 *N. Y. S.* 143, 148 (*Cty. Ct.* 1910); *United States v. Michael*, 180 *F. 2d* 55 (*C. C. A.* 3, 1949), *cert.* denied *sub nom. United States v. Knight*, 339 *U. S.* 978, 70 *S. Ct.* 1023, 94 *L. Ed.* 1383 (1950); 27 *Am. Jur.* 605 (1940). Thus, in the *Disbrow* case the court stated that "An indictment is found when it is presented by the grand jury in due form in open court," and in the *Herrmans* case the court similarly stated that "An indictment is found when it is duly presented by the grand jury in open court and there received and filed." There is no cause to believe that the term "found" in *R. S.* 2:183–2 was used in any different sense and we have accordingly concluded that, in the instant matter, the indictment was found on November 19.

The next contention advanced by the State is that the return of the indictment was within time since the last day of the two-year period (Sunday, November 18) was a nonjuridical day. See Heher, J., in *Newark v. Smith*, 120

*N. J. L.* 56, 59 (*Sup. Ct.* 1938) : "Sunday is *dies non juridicus.* This is a general policy that has always pervaded our law." *Cf.* 3 *Chitty's, The Practice of the Law (Am. ed.* 1836), *p.* 103. In *Ringgold, Sunday, Legal Aspects* (1891), 153, the author suggests that Sunday was not a *dies non* in early common law as distinguished from statutory law and that anciently courts of justice sat on Sundays. See *Swann v. Broome,* 1 *Bl.* 496, 526, 97 *Eng. Rep.* 999, 1001 (1764). However, in the sixth century this practice was prohibited by canon law, and as Justice Magie pointed out in *Glenn v. Eddy,* 51 *N. J. L.* 255, 256 (*Sup. Ct.* 1889), "The prohibition became part of the common law and courts ceased to sit on Sunday, except constrained by necessity, as for the reception of the verdict of a jury." See *Van Riper v. Van Riper,* 4 *N. J. L.* \*156 (*Sup. Ct.* 1818). *Cf. R. S.* 2:29-2; *R. S.* 2:27-44. In any event, our courts have consistently described Sunday as *dies non* and have in manifold circumstances sanctioned legal action on the following Monday where the last day prescribed therefor fell on Sunday. See *Von de Place v. Weller,* 64 *N. J. L.* 155 (*Sup. Ct.* 1899); *Williams v. Minsavich,* 3 *N. J. Misc.* 565 (*Cir. Ct.* 1925); *Melis & Antuzzi Co. v. Goldstein,* 4 *N. J. Misc.* 498 (*Cir. Ct.* 1926); *Ettrick v. State Board of Tax Appeals,* 12 *N. J. Misc.* 432 (*Sup. Ct.* 1934); *Great Falls Power Co. v. Andrus,* 7 *N. J. Misc.* 3 (*Sup. Ct.* 1928); *Southern Power Co. v. Cella,* 105 *N. J. L.* 573 (*E. & A.* 1929); *Potter v. Brady Transfer & Storage Co.,* 21 *N. J. Super.* 175 (*App. Div.* 1952).

In fixing a period of limitation the Legislature may undoubtedly prescribe the time and provide expressly how it shall be computed. See *Developments in the Law—Statutes of Limitations,* 63 *Harv. L. Rev.* 1177 (1950). Where, as in our State, the Legislature has failed to set forth any specific method of computation, the matter becomes one of statutory construction in the light of such relevant common law guides as are available. See *Von de Place v. Weller, supra,* at *p.* 156; *Poetz v. Mix,* 7 *N. J.* 436, 447 (1951); *Potter v.*

*Brady Transfer & Storage Co., supra,* at *p.* 178; *Sherwood Bros., Inc., v. District of Columbia,* 72 *App. D. C.* 155, 113 *F. 2d* 162, 163 (*App. D. C.* 1940). In the *Sherwood Bros.* case Justice Rutledge in construing a statutory limitation for the filing of claims for refund said:

"Business practice and accepted legal principle, apart from statute, permit and in some instances require an act to be done on the following Monday where the last day upon which it should have been done falls on Sunday. That is the common-law rule, and it has become embedded in the habits and customs of the community, both from respect for religious considerations and by long-established legal and commercial tradition. It would be reasonable, therefore, to assume that Congress had the common-law rule in mind when it legislated, and to construe the statute accordingly. Various state courts have interpreted state temporal statutes in this manner. Many states have enacted statutes for computation of time which expressly exclude the final Sunday. The *Federal Rules of Civil Procedure,* 28 *U. S. C. A.* following *section* 723c, do likewise. *Rule* 6 . (*a*). And the only decisions of the Supreme Court bearing on the problem which have come to our attention follow the same rule. *Street v. United States,* 1890, 133 *U. S.* 299, 10 *S. Ct.* 309, 33 *L. Ed.* 631; *Monroe Cattle Co. v. Becker,* 1893, 147 *U. S.* 47, 13 *S. Ct.* 217, 37 *L. Ed.* 72."

See *Union Nat. Bank v. Lamb,* 337 *U. S.* 38, 40, 69 *S. Ct.* 911, 93 *L. Ed.* 1190, 1194 (1949).

██ Our cases dealing with computation of time have displayed a wholesome tendency to reject artificial distinctions which, though pronounced in early English authorities, serve no modern day purpose. Thus in *McCulloch v. Hopper,* 47 *N. J. L.* 189, 190 (*Sup. Ct.* 1885), Justice Dixon in construing a general statute of limitations approved the rule that the first day is to be excluded and the last juridical day is to be included; he disapproved the former English distinction that the first day is included if the time starts from an event (*The King v. Adderley,* 2 *Dougl.* 463, 99 *Eng. Rep.* 295 (1780)) but excluded if the time starts from a specified day. Similarly, in *Von de Place v. Weller, supra,* Justice Gummere doubted, and in *Ettrick v. State Board of Tax Appeals, supra,* Chief Justice Brogan rejected the view expressed in *Hughes v. Griffiths,* 13 *C. B.* (*N. S.*) 324, 143

*Eng. Rep.* 129 (1862), that a distinction may be drawn between acts to be done by the court and those to be done by the parties; they favored the unequivocal rule that where the terminal day of the prescribed period is *dies non*, the act, whether by court or party, may legally be done on the following day. It may properly be stated that our courts have generally followed what is now customarily described as the common law rule, that statutory periods of limitation will be computed by excluding the first day, and including the last day unless it falls on Sunday or other *dies non*, in which event the following day is included. See *Warshaw v. De Mayo*, 8 *N. J. Misc.* 359 (*Sup. Ct.* 1930); *Great Falls Power Co. v. Andrus, supra; Poetz v. Mix, supra. Cf. Rule* 1:7–8; 2 *Moore's Federal Practice* (2nd ed. 1948), 1431.

■■ In *Poetz v. Mix, supra*, this court recently invoked the common law rule in aid of its construction of our two-year statute of limitations applicable to civil actions for personal injuries (*R. S.* 2:24–2; *N. J. S.* 2A:14–2) and excluded terminal days which were *dies non*. The defendants urge that the holding in that case should not be applied to a criminal statute of limitations which under *Moore v. State*, 43 *N. J. L.* 203, 209 (*E. & A.* 1881), has the effect of terminating the right of the State thereafter to prosecute. We agree fully that where the period of limitation has expired without indictment, prosecution may no longer be maintained. But that does not meet the issue at all since the question still remains as to when the period has expired and that, as in civil cases, is wholly a matter of statutory construction. We find nothing in our legislation or judicial decisions which would lend any significant support to the view that the Legislature contemplated different rules of time computation in civil and criminal statutes of limitations. On the contrary, recognition of a simple rule of time computation, applicable equally to civil and criminal proceedings, finds ample support in reason and persuasive authorities elsewhere. See *People v. New York Central Rail Road Company*, 28 *Barb., N. Y.* 284, 287 (*Sup. Ct.* 1858); *State v. Beasley*, 21

W. Va. 777, 781 (*Sup. Ct.* 1883); *State v. Smith*, 162 *Iowa* 336, 144 *N. W.* 32, 49 *L. R. A., N.S.*, 834 (*Sup. Ct.* 1913); *People v. Twedl*, 1 *Cal.* 2d 392, 35 *P.* 2d 324, 327 (*Sup. Ct.* 1934); *State v. Levesque*, 5 *Wash.* 2d 631, 106 *P.* 2d 309 (*Sup. Ct.* 1940); *Wiggins v. United States*, 64 *F.* 2d 950 (*C. C. A.* 9, 1933), *cert.* denied 290 *U. S.* 657, 54 *S. Ct.* 72, 78 *L. Ed.* 569 (1933); 20 *A. L. R.* 2d 1256 (1951); *Federal Rules of Criminal Procedure, Rule* 45, 18 *U. S. C. A.* In the *New York Central Rail Road* case the court applied, in a penalty proceeding, the common law rule of construction which excludes the first day and includes the last juridical day, and expressed the view that the Legislature in enacting the pertinent statute of limitations may be presumed to "have acted in reference to this rule." In the *Beasley* case the court dealt with a statute which had codified the common law rule in a provision that "The time within which an act is to be done shall be computed by excluding the first day and including the last; or, if the last be Sunday, it shall also be excluded." In rejecting the defendant's contention that it should not be applied in a criminal proceeding, the Supreme Court of West Virginia said:

"It is general in its terms and I can see no good reason why it should not apply to criminal as well as civil cases. The mode of computing time in any particular case, or class of cases, is much less important than that there should be some uniform rule on the subject. I think it was the purpose of the Legislature to have the same rule of computation in all cases, criminal as well as civil. It is not for the public interest that there should be two rules, or that the rule should be less certain in criminal than it is in civil cases."

In the *Twedl* case the court noted that "The rule seems generally recognized, though with some dissent, that, in computing time, the day of commission of the offense is excluded. This is the rule in civil cases, and no compelling reason for a different rule in criminal cases has been advanced." It is, of course, evident that the exclusion of the first day by construction of the statute extends the period

of limitation in no different degree or manner than the exclusion of the terminal day when it is *dies non*.

We embrace the foregoing views and the resulting principle that in the absence of implied or express legislative direction to the contrary, general statutes of limitations, criminal as well as civil, are to be construed in the light of the common law rule of computation which excludes the first day, and includes the last day unless it is *dies non*, in which event the following day is included. Accordingly, we find that the indictment in the instant matter was not barred by the statute and its dismissal by the lower court upon the contrary notion was erroneous. The defendants urge that even though not barred the indictment was legally insufficient and that its dismissal should be sustained on that ground. We consider this contention to be entirely without merit. The indictment presents a conspiracy in Sussex County and is in nowise defective because it also includes certain overt acts which may have occurred outside that county. See *State v. Ellenstein, supra;* 11 *Am. Jur.* 559 (1937). The defendants point out that the corporation was not joined as a defendant, but that is not material; apparently it is defunct and its omission, though it may have been a conspirator, does not impair the validity of the indictment against the individual defendants. *Cf. State v. Carbone*, 10 *N. J.* 329, 337 (1952). Nor is the indictment duplicitous within the cited case of *State v. Weleck*, 10 *N. J.* 355 (1952); it charges a conspiracy to cheat and defraud in violation of *R. S.* 2:119–1, and though the overt acts pursuant to the conspiracy may also amount to criminal offenses they do not alter the singleness of the crime charged. See *State v. Goodman*, 9 *N. J.* 569 (1952); *Frohwerk v. United States*, 249 *U. S.* 204, 209, 39 *S. Ct.* 249, 63 *L. Ed.* 561, 565 (1919); 27 *Am. Jur.* 685 (1940).

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justices HEHER and WACHENFELD—2.