State v. Adcox.

# THE STATE v. ROBERT ADCOX, Appellant.

### Division Two, December 22, 1925.

1. **BRIBERY: Necessary Element: Official Duty.** Under the statute (Sec. 3177, R. S. 1919), in order to constitute bribery of an official, the bribe must have been to induce the officer to neglect or omit the performance of an official duty, or to perform such duty with partiality or favor, or otherwise than as is required by law. In order to bribe an officer, he must be in the discharge of an official duty—a duty required or imposed upon him by law.

2. ———: **County Superintendent: Certificate of Graduation.** The statutes do not require or authorize the county superintendent of public schools to issue certificates of graduation to applicants or to certify grades of students in any of the schools of his county. It is not within his official duty to issue a certificate to an applicant showing that he has been examined and ascertained to possess the high school education required by the State Board of Health as a necessary qualification in order to obtain a license to practice medicine and surgery.

3. ———: ———: ———: **Act of 1921.** Section 7332, Revised Statutes 1919, requiring a person desiring a license to practice medicine, in presenting his application to the State Board of Health, to furnish a "certificate from the county school commissioner certifying that he has satisfactorily passed an examination equivalent to a grade from an accredited high school," was repealed and re-enacted in 1921, and again in 1923, and the quoted language was omitted therefrom, and the Act of 1921 (Laws 1921, p. 472) requiring an applicant to practice medicine to furnish, as satisfactory evidence of his qualifications, "a certificate of graduation from an accredited high school," does not apply to a certificate of a county superintendent, falsely certifying that the applicant had been examined by him in 1917 and given grades above seventy-five per cent on twenty different subjects. Such certificate was in no sense "a certificate of graduation from an accredited high school."

4. ———: ———: ———: **Common Law.** Where the statute requires an applicant to practice medicine, to present, as a necessary qualification, "a certificate of graduation from an accredited high school," common-law bribery cannot be based on a certificate of a county school superintendent, falsely stating that he examined the applicant and found him to possess the education required for gradua-

tion by a four-year high school, and upon a showing that it was a custom, and therefore a duty, for such superintendent to issue such certificates, where he himself testifies that he was not the superintendent of a high school and had no jurisdiction to make examinations or to issue certificates for a high school. Such certificate was not an official act imposed upon him by statute or custom, and even if it had told the truth it was worthless for any purpose.

5. ———: ———: ———: Authority of State Board: Presentation. The State Board of Health has authority to accept a "certificate of graduation from an accredited high school or its equivalent or a state normal school, college, university or academy," presented by an applicant desiring a license to practice medicine or surgery, which necessarily means a certificate by the teachers who furnished the instruction or those in charge of the records of grades of the school; but it has no authority to accept the certificate of a county superintendent of schools who had no connection with a high school or a college or other like school; and a defendant who pays money to such a county superintendent for a certificate falsely stating that the person named therein possesses the education required by such a school is not guilty of bribery, because such certificate was unofficial. But in this case there is no evidence that the person named in the false certificate ever presented it to the Board of Health in connection with an application for a license to practice medicine.

6. ———: ———: ———: False Affidavit: Fraud. A county school superintendent, who makes a false affidavit, stating that he examined for sixteen hours a certain person, who desired a certificate showing he possessed a high school education, when such person at no time appeared before him and was not examined at all, is guilty of a misdemeanor, but not of bribery, because the certificate was unofficial. And likewise the defendant, if he paid money to the county superintendent for such false affidavit, in order to perpetrate a fraud upon the State Board of Health, was not guilty of bribery, but of another and different offense.

Bribery, 9 C. J., Section 5, p. 404, n. 36; p. 405, n. 37. Physicians and Surgeons, 30 Cyc., p. 1559, n. 11 New.

Appeal from St. Louis City Circuit Court.—*Hon. Anthony F. Ittner*, Judge.

REVERSED.

*Jesse T. Friday* and *Mat J. Holland* for appellant.

(1)   There was no question, matter, election or proceeding pending, or which by law might be brought before B. H. Jolly, the Superintendent of Public Schools of St. Charles County, on which he was authorized, empowered or required to act in his official capacity. The powers and duties of a county school superintendent are defined by statute. Secs. 3177, 11346, R. S. 1919; State v. Butler, 178 Mo. 272.   (2)   There being nothing before the officer on which he had authority to act, the indictment charged no offense and the motion to quash should have been sustained. Sec. 3177, R. S. 1919; State v. Butler, 178 Mo. 272; State v. Meysenberg, 171 Mo. 1; State v. Barnes, 281 Mo. 514; State v. Faulkner, 175 Mo. 599; Kelly on Criminal Law (3 Ed.) p. 135, sec. 174. (3)   The allegations contained in the indictment are insufficient to charge the defendant with the crime of bribery, there being no averment of the facts necessary to bring it within the statute. Sec. 22, Art. 2 (Bill of Rights), Mo. Constitution; State v. Wade, 267 Mo. 256; State v. Timeus, 232 Mo. 177; State v. Keating, 202 Mo. 204; State v. Birks, 199 Mo. 271.   (4)   Under the pleadings and evidence the court should have given the instructions in the nature of a demurrer to the evidence requested by the defendant. State v. Butler, 178 Mo. 272; State v. Meysenberg, 171 Mo. 1; State v. Kyle, 177 Mo. 664; State v. Faulkner, 175 Mo. 599; State v. Smith, 119 Mo. 447; State v. Hesseltine, 130 Mo. 475.

*Robert W. Otto,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

The indictment is not sufficient. It would be a good indictment under Section 7332, R. S. 1919, as it stood prior to the amendment of 1921, Laws 1921, p. 472, and as amended, Laws 1923, p. 254. The amendment of 1921 omitted therefrom the following provision appearing in Sec. 7332, R. S. 1919: "A certificate from the county school commissioner certifying that they have satisfactorily passed an examination equivalent to a grade from

an accredited high school.'' This amendment relieved the county school superintendent of his official duty and power to examine and grant certificates to persons desiring to appear before the State Board of Health for an examination for license to practice medicine and surgery. The motion to quash should have been sustained. R. S. 1919, sec. 7332, as amended, Laws 1921, p. 472, and Laws 1923, p. 254, sec. 3177; State v. Butler, 178 Mo. 339; State v. Faris, 229 S. W. 1102.

WHITE, J.—Under Section 3177, Revised Statutes 1919, the defendant was indicted in St. Louis County on charge of bribing a public official. He was tried before a jury, and June 18, 1924, a verdict was returned finding him guilty and assessing punishment at two years' imprisonment in the state penitentiary.

The evidence showed that in April, 1923, one B. H. Jolly was County Superintendent of Public Schools of St. Charles County. The defendant, Robert Adcox, was interested in procuring licenses from the State Board of Health for persons desiring to practice medicine and surgery. Before licensing an applicant to practice medicine, the State Board of Health required a certificate showing certain preliminary education, besides medical education. Just what this was appears only by inference.

Adcox had an arrangement with Jolly whereby the latter, as Superintendent of Public Schools, was to sign and swear to certificates showing the extent of education acquired by persons to be named by Adcox. Adcox made out the certificates and sent them to Jolly; Jolly swore to them, returned them to Adcox, who paid him five dollars each for them. The certificate, which is the subject of the bribery charged in this case, appeared to have been made out and sworn to by Jolly, July 12, 1917. It certified that one Bernard Adler had been examined by him July 5th, 6th and 7th, 1917; that the examination consumed sixteen hours, and covered the work of a Missouri high school for four years, as required by the Medical Association for matriculants in medicine

and surgery, and applicants before state medical examining boards for licenses to practice. It showed Adler's grades in twenty subjects, each being above seventy-five per cent. This purported to have been sworn to by Jolly, when in fact no such person as Bernard Adler ever appeared before Jolly or was examined by him. Adcox paid for the certificate in St. Louis April 27, 1923, and it was handed to Adler for the purpose of his application for a license. The State's case was made out entirely on the evidence of Jolly, who testified that his certificate was false in every respect.

No evidence was offered on the part of the defendant except that of witnesses who swore that he possessed good reputation.

The indictment with proper formality alleged these facts shown by the evidence, and charged that Jolly, as County Superintendent of Public Schools of St. Charles County, was authorized by law to issue certificates to persons appearing before him, showing that they had successfully passed examinations equivalent to a grade from an accredited high school; that April 27, 1923, the defendant, Robert Adcox, corruptly entered into an agreement with him, "in his official capacity," by which Adcox was to pay Jolly for certificates, etc., and set out the transaction relating to the Adler certificate.

The defendant filed a motion to quash the indictment. The motion was overruled, evidence was introduced, defendant was found guilty, as stated, was sentenced and appealed.

I. In order to constitute bribery of an official, under Section 3177, the bribe must have been in order "to induce him (the officer) to neglect or omit the performance of *any official duty,* or to perform such duty with partiality or favor, or otherwise than as is required by law."

Official Duty.

No other language in that section can possibly be construed to apply to the act here charged. The general rule, laid down in 9 Corpus Juris, p. 404, is as follows:

"In order to bribe an officer, he must be in the discharge of a legal or official duty. In other words, there can be no bribery of any official to do a particular act unless the law requires or imposes on him the duty of acting. A moral duty is insufficient."

In case of State v. Butler, 178 Mo. l. c. 319, this court said in relation to the bribery of an official:

"The very purpose of the statute is to prevent public officials from being influenced in respect to questions upon which *they are authorized to act.* How can an officer be influenced to act when there is no law requiring him to do so, and no power under the law authorizing him to act?" [See also, State v. Faris, 229 S. W. l. c. 1102; State v. Lehman, 182 Mo. 459-460.]

II. Article XI, Chapter 102, Revised Statutes 1919, defines the powers and duties of a county superintendent of schools. It sets out in detail everything that comes within his authority. There is nothing in the article, nor in any part of the chapter, requiring him or authorizing him to issue certificates of gradua-

County Superintendent. tion, or to certify grades of students in any of the schools of his county. The only certificates he is authorized to issue are certificates to teachers, mentioned in Article XII, beginning with Section 11358. Certificates of graduation and of grades of students very naturally are issued by the teachers who give the instruction and make the examinations of such students. It was therefore, not within the official duty of Jolly to issue a certificate, such as the one involved in this case, or any other of like character.

III. Under Section 7332, Revised Statutes 1919, in the chapter relating to medicine, surgery, etc., a person desiring to practice medicine, in present-

Certificate of Graduation. ing his application to the State Board of Health, was required to furnish a "certificate from the county school commissioner certifying that he has satisfactorily passed an examination equiv-

alent to a grade from an accredited high school." When that law was in force, it may be said, it was sufficient to impose upon the county superintendent of schools the duty of issuing certificates, such as the one under consideration here. That statute was repealed and re-enacted in 1921, and again in 1923, leaving out any language which could be applied to a county superintendent of schools.

The Act of 1923, approved March 27th of that year, was not in force when the alleged offense was committed, and the Act of 1921 applies. As the section reads (Laws 1921, p. 472), an applicant for license to practice medicine is required to furnish satisfactory evidence of his preliminary qualifications, to-wit, "a certificate of *graduation* from an accredited high school," etc. The certificate in this case was not a certificate of graduation. The act which Jolly purported to perform was not within the compass of any official duty of *any* officer.

There may be common-law bribery. [See State v. Faris, 229 S. W. 1. c. 1102.] It may be thought that, although the offense charged here is bottomed squarely on Section 3177, it could be shown that it was a custom, and therefore a duty of Jolly to issue such a certificate. Even if that were permissible it would not affect this case. Jolly himself testified that he was not superintendent of the city schools of St. Charles; that he had no jurisdiction there to make examinations or to issue certificates. He was not a teacher, and there was no such custom or practice.

Common-Law Bribery.

Adcox paid for a scrap of paper which, if it had told the truth, was worthless for any purpose.

We are obliged, therefore, to conclude that no criminal offense was stated in the indictment. The Attorney-General confesses error in this respect and asks that the judgment be reversed.

IV. The Board of Health, under Section 7332, Laws 1921, page 472, had no authority to accept the certificate made by Jolly. Only a "certificate of *graduation* from

an accredited high school or *its* equivalent [the equiv-

Acceptance. alent of the school] or state normal school, college, university or academy,'' would meet the requirements of the law. Such proof of graduation would naturally have to be certified by the person or persons authorized to do it; that necessarily would be teachers who furnished the instruction, or those in charge of the records of grades in such schools. Doubtless the Board of Health takes legal advice in such matters, and there is no evidence that Adler ever presented his certificate to the board.

Doubtless Jolly was guilty of making a false affida-

False Affidavit. vit under Section 3130, Revised Statutes 1919. In that case his act was unofficial, a misdemeanor, and not the subject of bribery under any statute.

If Adcox used the paper which he paid Jolly to swear to, in order to perpetrate a fraud upon the State

Fraud. Board of Health, that is another and different offense, which does not appear in the record here.

The judgment is reversed and the defendant discharged.

All concur.