THE STATE v. PETE HART, JESS GARNER and FRED GARNER, Appellants.
—56 S. W. (2d) 592.

Division Two, December 14, 1932.

*Hiett, Covert & Cunningham, W. H. Robinett* and *L. E. Newton,* for appellant.

*Stratton Shartel*, Attorney-General, and *Denton Dunn*, Assistant Attorney-General, for respondent.

WESTHUES, C.—Appellants were jointly charged, by an information filed in the Circuit Court of Texas County, Missouri, with the crime of robbery in the first degree by means of a dangerous and deadly weapon. Appellants were jointly tried. The jury, by separate verdicts, found the defendants guilty and assessed the punishment of each at ten years' imprisonment in the penitentiary. A joint motion for a new trial was filed. The court overruled this motion and each defendant was separately sentenced in accordance with the verdict of the jury. From this sentence appellants were granted an appeal to this court.

According to the testimony of the prosecuting witness, Baucom, the following occurred: On November 10, 1930, the witness drove alone in his car from Kansas City, Missouri, south over United States Highway No. 71 to Carthage thence east over routes 66 and 60 through Springfield and Mountain Grove to Cabool. At this point the witness turned north intending to go to Houston, Missouri. When he reached a point within a few miles of Houston, at about eleven P. M., he was crowded off the highway by another car. The witness testified that defendant, Pete Hart, stepped on the running-board of his car with a large revolver in his hand and ordered him to stop.

The witness did so and the automobile that had crowded the witness off the highway stopped just a little ahead of the witness. When the witness stepped out of his car, the three defendants ordered him to hold up his hands; searched him and took $509 in paper money from his person. The Garners then securely tied Baucom's hands and feet with a rope, while defendant, Pete Hart, kept the gun pointed at him. After some argument among the defendants and a woman who was with them, the woman removed a stocking from her foot and the defendants utilized this as a gag. A rock was placed in the stocking and the stocking tied around Baucom's head with the rock in his mouth. Baucom was struck in the back of the head and later placed in his car, which was then pushed over an embankment. The witness testified that while he was lying in the road, after he had been struck, Fred Garner drove the car over his body, breaking a number of his ribs. At the trial the witness pointed out which of the defendants had committed the various acts detailed in his evidence. Baucom did not know the defendants. He testified that the defendants alternately passed before the lights of the two cars thus enabling him to observe them closely. He also recognized their voices, as he had heard their argument on the night of the robbery. At about four A. M., the next morning Baucom was found. He had been seriously injured and was unable to speak for some time. Three or four days later, when he had regained his voice, he gave a vague description of the men to the sheriff. About a week later defendants were arrested and brought before Baucom one at a time and he positively identified them as he did at the trial, as the men who had robbed him. The prosecuting witness, at the preliminary hearing, testified that he had seen the same three men and a woman pass him in a car on his way to Houston from Kansas City; that they were driving an Essex car and he first saw them at Butler, Missouri. At the trial Baucom testified that he did not know whether the men that robbed him were the same as the men he had seen on his way from Kansas City, Missouri.

Defendant interposed as a defense an alibi. The evidence in support of the alibi, if true, would have made it impossible for defendants to have been at Butler, Missouri, during the day of November 10. The evidence is not so convincing as to defendants whereabouts at the time of the robbery. The theory of the defendants is that the three men whom Baucom had seen at Butler and who on several occasions passed him during the day on the highway, were the perpetrators of the robbery. Many witnesses testified that the three defendants were often seen together at Mountain Grove, but not on the day in question. At least five witnesses testified for each defendant as to his whereabouts during the afternoon of November 10. Defendant, Pete Hart, offered evidence of his presence at Mountain Grove all day and evening of November 10. Fred Garner offered

evidence tending to establish his presence at Manes, about eighteen miles north of Mountain Grove. · Defendant, Jess Garner, accounted for his whereabouts by witnesses who had seen him in and near Mountain Grove during the day and evening of November 10. Appellants have filed a highway map with their brief and according to that Mountain Grove is nineteen miles west of Cabool and Cabool is eighteen miles south of Houston.

■■ Appellants make three assignments of error as grounds for a new trial. The first is that the record proper failed to show that a jury had ever been impaneled, or that the court had ever made a finding that thirty men were qualified to try the case. The record entry on the point in question reads in part as follows:

"Now at this day comes the Prosecuting Attorney for the State and also comes the defendant in his own proper person, into open court, with his attorneys and counsel and being duly arraigned for his plea to the Information in this cause says he is not guilty of the charges therein; whereupon comes the following jury, to-wit:" (Names of twelve jurors.) "twelve good and lawful men *summoned* from the body of Texas County, who are *duly sworn* to try this cause;" [Italics ours.]

The contention that the record failed to show the court made a finding that thirty men were qualified to try the case is without merit. No contention was made, nor does the record disclose, that thirty men were not called in this case. Assuming that thirty jurors were not called, appellants failed to object at the time and, therefore, waived that right. The point is first made in the motion for a new trial and there is no showing in support of the allegation that thirty veniremen were not called. It was held in State v. Yondell, 100 S. W. 1. c. 470, 201 Mo. 646, that an objection that an insufficient number were drawn, made after the jury was sworn to try the case, came too late and defendant had waived his right to a full panel of forty jurors. See, also, State v. Bell, 65 S. W. 736, 166 Mo. 106; State v. Perno, 23 S. W. (2d) 1. c. 88 (1-3).

The record in this case affirmatively shows that "twelve good and lawful men, summoned from the body of Texas County, who are duly sworn to try this case, etc." No objection was made at the trial, nor here, that the twelve men, who tried the case, were not in every way qualified jurors. Under the Constitution a defendant has the right in a felony case to be tried by twelve qualified jurors. That constitutional right was accorded the defendant in this case.

Appellants contend that the statute Sections 3676 and 3681, Revised Statutes 1929, make it mandatory that a jury should be impaneled as well as sworn. The contention is further made that a record showing a jury to have been sworn is no evidence of the fact that a jury was impaneled. We cannot see any merit in appellants' con-

tention. A jury may be impaneled and not sworn. But, if the record shows that a jury was summoned and sworn does it not necessarily imply that the jurors were called and selected to try that particular case? Why else would twelve men be in the jury box and sworn to try a case unless they had been selected as jurors in that case? After all, if a jury has been duly summoned and sworn to try a case has it not been impaneled? The record entry in this case contains the names of twelve jurors. The word 'panel' with reference to jurors simply means a list of the veniremen summoned for that term of court. In Webster's International Dictionary we find panel in law defined as ''A piece of parchment, or a schedule, containing the names of persons summoned as jurors by the sheriff.'' In 46 Corpus Juris, 1172, we find ''panel'' defined as ''A schedule, or roll, containing the names of jurors summoned.'' In Webster's International we find ''impanel'' to mean ''To enter in or on a panel; to form or enroll as a list of jurors in a court of justice.''

■ The ''impaneling of a jury'' means to summon and select a jury. The statute Section 3681, supra, relied on by appellants, prescribes the order of procedure to be followed in the trial of criminal cases. The first clause of that section, which reads: ''The jury being impaneled and sworn, the trial may proceed in the following order:'' pertains to matters of procedure only. The word ''impanel'' does not have a peculiar or technical meaning and in the sense it is used in the statute is synonymous with the word select. The record in this case affirmatively shows that a jury was duly summoned and sworn to try the case. That necessarily implies that a jury had been impaneled. If there was any irregularity in the manner of selecting the jury, which does not appear in this case, it was waived by defendants in not objecting to the irregularity at the time. [State v. Matthews, 88 Mo. 121; State v. Jenkins, 255 S. W. (Mo. App.) 338; State v. Perno, 23 S. W. (2d) 87; 16 C. J. 1256, sec. 2786.] The provisions of the statute with reference to the selection and impaneling of a jury are directory only and not mandatory as defendants contend. [State v. Night, 312 Mo. 1. c. 418 and 419, 278 S. W. 1. c. 1038 (3) (4); State v. Adams, 289 S. W. 1. c. 951.]

■ Appellants complain of instruction number four, which reads as follows: ''The jury are the sole judges of the credibility of all of the witnesses and of the weight and value to be given to their testimony.'' The giving of an instruction on the credibility of witnesses is largely within the discretion of the trial court. The instruction as given is not erroneous. Defendants did not offer an instruction on this question and, therefore, they are in no position to complain of the instruction as given. [State v. English, 308 Mo. 1. c. 707, 274 S. W. 1. c. 474 (10-12); State v. Miller, 292 S. W. 1. c. 441 (3); State v. Lewis, 20 S. W. (2d) 1. c. 536 (13) (14).]

Appellants earnestly insist that under the evidence in this case the verdict of the jury should not be upheld. This point is raised by an assignment of error that there was no substantial evidence to support the verdict. In a very recent case, somewhat similar on the facts, State v. Scobee & Manning, 331 Mo. 217, 53 S. W. (2d) 245, this court held our sole function to be to determine whether the State produced substantial evidence. We find in that opinion the following comments that are appropriate here. They read:

"The prosecuting witness, Eyler, positively identified Scobee as one of the robbers, and Manning also with as much conviction, though having had-less opportunity to visualize his appearance. But Eyler was not with the robbers merely for a fleeting moment in a state of mental tension. They drove him out into the country, bound and gagged him, and talked to him and with each other. Certainly in these circumstances his senses would have been on the alert to note such facts as the size, general appearance, and movements of the men and the sound of their voices. Such evidence is competent and substantial. [State v. Riddle, 324 Mo. 96, 102, 23 S. W. (2d) 179, 182.]"

So in this case the prosecuting witness was, according to his evidence, with defendants a sufficient length of time to afford him the opportunity of closely observing their features, as they passed back and forth before the lights of the two automobiles. The parties who committed the robbery had a heated discussion among themselves, during the perpetration of the offense, and therefore, the prosecuting witness observed their manner of speech. At the trial, the prosecuting witness positively and without hesitation pointed out which of the defendants committed the various acts during the robbery. He accused Pete Hart of having the revolver and the Garner boys of having tied his hands and feet. Fred Garner was pointed out as the man who had a heated argument with the woman. Pete Hart and Jess Garner threw the witness in the car after he had been tied and assaulted. Fred Garner, the witness said, backed the car of defendants against the car of the witness and pushed it over the embankment. The witness was severely cross-examined and we are unable to see where he was shaken in any part of his testimony. Identification of the defendants by the witness, under these circumstances, was substantial. [State v. Blackmore, 327 Mo. 708, 38 S. W. (2d) l. c. 34 (1, 2), and cases there cited; State v. Albritton, 328 Mo. 349, 40 S. W. (2d) l. c. 679 (3).]

The trial court protected the rights of defendants throughout the entire trial. We may add that in its rulings the court was extremely fair to defendants. All of the instructions, asked by defendants, were given. It may not be amiss to quote an instruction, given at defendant's request, to illustrate the emphatic manner in which the jury were told that they must find defendants guilty beyond a reasonable doubt or acquit them. The instruction reads:

"The court instructs the jury that it is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of their innocence. Suspicious, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the evidence to justify a conviction must be positive, convincing, establishing the defendants guilty of the charge contained in the information beyond a reasonable doubt, and unless the evidence,so convinces you, a verdict of not guilty must be returned."

The record discloses that defendants were accorded a fair trial. The verdict is supported by substantial evidence. We are, therefore, not authorized to disturb the finding of the jury.

We have closely examined the record proper and find no reversible error therein. The judgment of the trial court must be affirmed. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.