STATE OF MISSOURI, Respondent, v. CHARLES RAY BROWN, Appellant, No. 43714—267 S. W. (2d) 682.

Division One, April 12, 1954.

Motion for Rehearing or to Transfer to Banc Overruled and Opinion Modified on Court's Own Motion, May 10, 1954.

*William A. Moon, Fred A. Moon* and *Patterson & Patterson* for appellant.

*John M. Dalton,* Attorney General, and *John S. Phillips,* Assistant Attorney General, for respondent.

LOZIER, C.—Defendant has appealed from his conviction and two year sentence for taking a bribe, a felony. His assignments here are: The trial court erred: In refusing to direct an acquittal; in giving Instruction 3; in refusing his requested Instruction D; in refusing to receive certain evidence on his plea in abatement; in refusing to quash the indictment; in refusing to sustain his challenge of a venireman for cause; and in permitting the state's attorney to make an improper argument.

We shall refer to appellant as defendant. All section references, unless otherwise noted, are to RSMo 1949, V.A.M.S.

In 1951 and 1952, defendant was a member of the city council of the City of Springfield and Commissioner of Public Streets and Public Improvements. Sometime during the spring of 1951, the council received proposals from five engineering concerns for consultant services in the making of both a preliminary and a comprehensive survey of the city's sanitary sewage system, and to assist the city in obtaining federal participation in the cost thereof. As to the comprehensive survey, all bids were identical (the minimum fee established by the Canons of Ethics of the Missouri Society of Professional Engineers). As to the preliminary survey, there were three $5000 bids, a $7000 bid and a $7500 bid (that of Russell & Axon, a Missouri corporation with its principal office in the City of St. Louis). In a report to the council, dated June 13, 1951, the city sanitary engineer (to whom the council had referred the proposals for "evaluation"), pointed out that Russell & Axon had designed the

original sewage disposal plants and "claims considerable data on file and while much of it may be outdated, the knowledge of the drainage areas may prove a great benefit." He expressed his belief that the city "would stand to gain a great deal if the program were under the personal guidance of Mr. George Russell." On June 18, 1951, the committee of the whole council (including defendant) and the sanitary engineer recommended award of the contract to Russell & Axon. On June 18, 1951, the council, by ordinance (all four councilmen voting "aye") authorized the mayor to execute the city's contract, dated June 18, 1951, with Russell & Axon. The contract was executed a few days thereafter.

Russell & Axon made the preliminary survey and submitted the matter to the federal agency. On October 8, 1951, the agency agreed to advance to the city funds in aid of financing the cost of plans and specifications for certain additions to and extensions of the city's sanitary sewage system. Thereafter, Russell & Axon made the comprehensive survey and received from the city in 1952: $12,802.50 on April 9; $29,557.50 on May 20; $127,866.62 on August 15; and $1000 on September 16. The council's minutes showed that, on many occasions between June 18, 1951, and June 13, 1952, defendant either moved or seconded the adoption of a resolution or the passage of an ordinance relating to the Russell & Axon contract, the work thereunder and payments therefor and the city's application for and receipt of federal funds.

According to Mrs. Rita Wolf, Russell & Axon's bookkeeper, Russell & Axon had an office in Florida and an office in St. Louis. In the St. Louis office, the costs of all projects were charged to either "Missouri" or "Florida." "Missouri" included projects in Missouri, Illinois, Kentucky and Tennessee. However, the records as to each project showed the expenditures charged against that particular project. The records for April, 1952, showed a $128.03 payment, by check dated April 30, 1952, to Warren and Jones, Attorneys, Fulton, Kentucky, for "professional services"; and on the same day the Springfield project was charged $128.03 for "Prof. Service." In Mrs. Wolf's opinion, the latter entry was based upon the $128.03 check to Warren and Jones.

On May 21, 1952, Warren and Jones "billed" Russell & Axon as follows: ■■■ "To Professional Services, Missouri Legal Service (as per agreement), $15,404.47." The account was marked "O.K.—G.R." (George Russell) and paid by Russell & Axon by a check for $15,404.47, on which was typed, "For Professional Services—Missouri Legal Service, as per agreement." Russell & Axon's May, 1952, "Operating Costs" for the Springfield project showed payments of both $15,810.17, "Legal and Professional" and $24,268.16. The latter was total costs for that month, apparently. In Mrs. Wolf's opinion, the first item was included in the second.

In his opening statement (made before the state offered its evidence) and once during the presentation of the state's case, defendant's counsel admitted that defendant had received and cashed the personal check, No. 979, of James H. Warren (of Warren and Jones) dated June 5, 1952, payable to Ray Brown (defendant), for $1000.

The comprehensive survey of the sanitary sewer system had to be completed and submitted to the federal agency prior to June 30, 1952. In an effort to meet this deadline, defendant, another councilman and the city sanitary engineer went to St. Louis the first week in June, 1952, to confer with Russell & Axon and complete the necessary documents for filing with the federal agency. The hotel bills of the two councilmen were paid by Russell & Axon; those of the city sanitary engineer were paid by the city. On June 4 and 5, 1952, both Warren and Jones were in St. Louis, stayed at the same hotel as defendant and the other councilman and their hotel bills were paid by Russell & Axon. Defendant was one of the city officials whom a representative of Russell & Axon entertained, at Russell & Axon's expense, in Washington, D. C., in September, 1951.

Such was the state's case. Defendant testified: He first met Warren five or six months after June 18, 1951, while on a hunting trip in Samburg, Tennessee, near Fulton, Kentucky; thereafter he saw and talked with Warren in Springfield in January or February, 1952, and in St. Louis in April, 1952, and June, 1952; he received the $1000 check from Warren on the latter occasion as part payment on a farm he had sold Warren for $3250. (In rebuttal, the state put on the stand the former prosecuting attorney who testified that defendant had told him that he had won the $1000 from Warren in a crap game.) Warren corroborated defendant as to those matters and further testified that neither he nor his partner Jones had ever performed any services in connection with any of Russell & Axon's work in Missouri and that the payments made to him (and charged against the Springfield project on Russell & Axon's books) were for services rendered Russell & Axon in Kentucky and Tennessee.

Sec. 558.020 is: "Every judge or justice of any court, magistrate, member of the legislature, or officer or employee thereof, and any other public officer or employee of this state, or of any county or city, town or township thereof, who shall, directly or indirectly, accept or receive any gift, consideration, gratuity or reward, or any promise or undertaking to make the same: *First,* under any agreement that his vote, opinion, judgment or decision shall be given for any particular person, or in any particular manner, or upon any particular side, or more favorable to one side than the other, in any question, election, matter, cause or proceeding which may be pending or be brought before him in his official capacity, or that he *shall* neglect or omit to perform any official duty, or perform the same with partiality or favor, or otherwise than according to law; *or, second,* in

consideration that he has given his vote, opinion, judgment or decision for any particular person, or in any particular manner, or upon any particular side, or more favorably to one side than the other, in any question, election, matter, cause or proceeding, or has neglected or omitted to perform any official act or duty, or perform such act or duty with partiality or favor, or in anywise contrary to law, shall be deemed guilty of bribery, and punished as prescribed in section 558.010.'' (Our italics.)

Count II of the instant indictment, upon which defendant was tried, was based upon ▉▉▉ the second subsection. (Count I, based upon the first subsection, was quashed for reasons not material here.) In substance, the charge in Count II was: On June 18, 1951, the matter of the award of the contract for the sewer system surveys was pending before the council; Russell & Axon were endeavoring to have the council award the contract to that corporation; defendant voted to so award the contract; on June 5, 1952, defendant ''feloniously, wilfully and corruptly'' took and received from Warren, agent of Russell & Axon, ''a certain gratuity, to wit,'' the $1000 check ''in consideration'' of his favorable vote on June 18, 1951.

▉▉ Defendant first contends that the state did not make a submissible case for the sole reason that there was no evidence whatsoever that, prior to voting on the ordinance awarding the contract to Russell & Axon on June 18, 1951, defendant had entered into any agreement regarding his vote on the ordinance or had made any promise to vote to award the contract to Russell & Axon. (Defendant does not here contend that, if proof of a prior corrupt agreement was unnecessary, the evidence was not sufficient to sustain his conviction.) He asserts: ''The acceptance by a public officer of a gift after an official act is consummated without any prior corrupt understanding does not constitute bribery.''

We do not agree. Sec. 558.020 is clear. Under the first subsection, a corrupt agreement prior to the official's act is essential. Under the second subsection, the offense consists in the acceptance by the officer of a gratuity from the beneficiary of his official act, irrespective of the existence of a corrupt agreement prior to the official act. The section makes punishable as bribery the acceptance or receipt by a public official of ''any gift, consideration, gratuity or reward, or any promise or undertaking to make the same'' under *either* of these circumstances: *''First, under any agreement''* as to matters ''which may be pending or be brought before him * * * or that he *shall* neglect or omit *to* perform any official duty * * * or, second,* in *consideration* that he *has given his vote* * * * in any question * * * or *has neglected or omitted to perform* any official act * * *.''* Thus, the section makes punishable *both* the taking of a gift or gratuity (or a promise thereof) *under any agreement as to future action* and the taking of a gift or gratuity (or a promise

thereof) *for past action* taken *without a prior agreement* (or promise). This court has held that violation of either subsection is bribery. State v. Lassley, 351 Mo. 1024, 174 S. W. 2d 795, 797[1]. (In that case, defendant was charged with a violation of the second subsection. This court reversed because an instruction hypothesized a violation of the first subsection—*"upon the agreement* of the said W. O. as aforesaid to procure,"* etc.)

The historical development of Sec. 558.020 confirms our conclusion that a prior corrupt agreement is not necessary under the second subsection. The act of the 1808 territorial legislature, applicable only to judges and justices, made punishable both the giving and the taking of a bribe. Vol. I, Terr. Laws, Sec. 21, p. 214; Geyer, Dig. Mo. Terr. Laws (1818); Sec. 20, p. 149. The act applied only to a bribe as to matters then "depending before" the judge and justice. In 1825, the state legislature extended the provisions of the 1808 law to cover members of the general assembly. 1 RSMo 1825, Sec. 59, p. 300. The offense still was only as to matters "depending or to be brought before" the judge or justice or "pending or to be brought before" the legislature or either house thereof. However, the same legislature enacted another statute, applicable to judges, justices, members of the legislature, and certain other public officials, of which Sec. 558.020 is the direct descendant. 1 RSMo 1825, Sec. 60, pp. 300-301. Such Sec. 60 made criminal the act of giving a bribe "to induce or influence such officer to execute any of the powers in him vested, or perform any duty of him required, with partiality or favor or otherwise than is required by law; *or in consideration* that such officer hath *exercised* any power in him vested, or performed ▮ any duty of him required, with partiality or favor or otherwise contrary to law." The offense of the officer was taking the bribe "with intent or for the purpose or *consideration aforesaid."* (Our italics.) Ten years later, the legislature enacted a statute, the language of which (insofar as here involved) is almost identical with that of Sec. 558.020[1]. We

---

(1) "Sec. 2. Every such officer who shall, directly or indirectly, accept or receive any such gift, consideration, gratuity or reward, or any promise or undertaking to make the same.

*"First,* Under any agreement that his vote, opinion, judgment or decision, shall be given in any particular manner, on any particular side, or more favorable to one side than the other, in any question, matter, cause or proceeding, which may be pending or be brought before him in his official capacity, or that he shall neglect or omit to perform any official duty, or perform the same with partiality or favor, or otherwise than according to law, or,

*"Second,* In consideration that he hath given his vote, opinion, judgment [or] decision, in any particular manner, on any particular side, or more favorable to one side than the other, of any question, matter, cause or proceeding, or hath neglected or omitted to perform any official act or duty, or performed such act or duty with partiality or favor, or otherwise contrary to law, shall, on conviction, be adjudged guilty of bribery, and shall be punished in the penitentiary for a term not less than two years." ("Performed," in the second subdivision, became "perform" in Sec. 3178, RSMo 1919.)

set out that statute in the footnote exactly as it appeared in RSMo 1835, Sec. 2, pp. 197-198. This, to emphasize the clarity with which the original legislative enactment of what is now 558.020: Made punishable two distinct offenses, and as to one (relating to future action) required a prior corrupt agreement and as to the other (relating to past action) did not require such an agreement.

Defendant argues that, in voting for the ordinance on June 18, 1951, he *could* "have been acting from the purest motives," with no corrupt intent to be partial or to favor Russell & Axon. On the other hand, defendant, without any prior agreement with Russell & Axon, *could* have cast his vote with intent to ask for and take from Russell & Axon a gratuity "in consideration that he had given" Russell & Axon a favorable vote. Indeed, defendant, without any prior agreement, *could* have cast his vote with no intention of asking for or receiving a gift or gratuity and *thereafter* (even without having asked therefor) accepted the $1000 "in consideration" that he *had* voted favorably to Russell & Axon. In either instance, the express language of the second subsection of Sec. 558.020 made his acceptance of the $1000 the acceptance of a bribe.

Defendant cites People v. Coffey, 161 Cal. 433, 119 P. 901, 909[13], 39 LRA(NS) 704, and texts citing that case as authority for the broad statement that, absent an agreement made prior to acting, acceptance of a gratuity by a public official after he has acted is not bribery. 8 Am. Jur., Bribery, Sec. 6, p. 888; 11 C.J.S., Bribery, Sec. 2c(2), p. 844; 2 Bishop, Crim. Law (9th Ed.), Sec. 86, p. 64. However, the statute involved in the Coffey case is similar to the first subsection of Sec. 558.020, relating to a prior agreement as to then pending or possibly-to-become-pending matters. 1906 Cal. Penal Code, Sec. 165, p. 89. The statute involved in Commonwealth v. Mannos, 311 Mass. 94, 40 N. E. 2d 291, 301[19], cited by defendant, extended only to the corrupt request for or acceptance of a gratuity by the public official under an agreement or understanding as to a matter "which is or may be by law brought before him." Mass. G.S., Ter. Ed. (1932), Ch. 268, Sec. 8. People v. Gibson, 191 N. Y. 227, 83 N.E. 976, also involved a statute which required a prior agreement.

None of defendant's cited Missouri cases involved the second subsection of Sec. 558.020. State v. Meysenburg, 171 Mo. 1, 71 S. W. 229, and State v. Schnettler, 181 Mo. 173, 79 S. W. 1123, involved the first subsection of Sec. 558.020. State v. Farris (Mo. App.), 229 S. W. 1100, State v. Butler, 178 Mo. 272, 77 S. W. 560, State v. Adcox, ▮▮▮ 312 Mo. 55, 278 S. W. 990, and State v. Adams, 308 Mo. 664, 274 S. W. 21, involved the first subsection of Sec. 558.010 (offering or giving a bribe with intent to influence the official's action as to pending matters). State v. Graham, 96 Mo. 120, 8 S. W. 911, involved the first subsection of Sec. 558.030 (offering or giving a bribe to secure appointment to office). It is of interest that all three

sections—558.010, 558.020, 558.030—carefully, and by the use of "first" and "or second," distinguish between bribery based upon a prior corrupt agreement and bribery which is not the result of such an agreement.

We rule that, in the instant case, the state was not required to prove the existence, prior to June 18, 1951, of any agreement or promise by defendant that he would cast his vote in favor of awarding the contract to Russell & Axon. It follows that the state made a submissible case and that the trial court properly refused to direct an acquittal.

It also follows that the trial court did not err in giving Instruction 3, or in refusing defendant's Instruction D, or in refusing to quash Count II of the indictment. Defendant says that, under Instruction 3, "all the jury were required to find in order to convict was: (1) That Warren was acting as agent for Russell & Axon; (2) that defendant accepted a gratuity from him, to wit, a check for $1000; and (3) that the check was in consideration that defendant had theretofore cast his vote in favor of the ordinance authorizing the contract with Russell & Axon." Noting that Instruction 3 required a finding that defendant "feloniously, wilfully and corruptly" accepted the check, we find no merit in defendant's complaint that that instruction did not define "in consideration." (Instruction 8 directed an acquittal if the jury found that the $1000 check was given to defendant "merely in appreciation of his having voted for" the ordinance and that such vote "had not been given with partiality or favor to Russell & Axon." While we do not rule the propriety of Instruction 8, we doubt if defendant was entitled to an acquittal if the jury found that the check which he accepted was given "merely in appreciation of his" vote.) Defendant's Instruction D was properly refused because it told the jury that "the term 'in consideration,' as used in these instructions, presupposes a previous corrupt agreement" and directed an acquittal unless the jury found that defendant had a prior agreement with Russell & Axon that "for a consideration from Russell & Axon he would vote for said ordinance and that thereafter" the $1000 check "was, by authority of Russell & Axon, delivered by Warren to defendant in consideration that he had so voted and in fulfillment of such an agreement." For the reasons stated, the indictment (which, it will be recalled, charged that defendant's acceptance of the check was felonious, wilful and corrupt) was not defective for failure to charge a prior agreement. The three assignments are overruled.

Sec. 545.110 is: "If there be at any time *pending* against the same defendant two indictments for the same offense, or two indictments for the same matter, although charged as different offenses, the *indictment first found* shall be deemed to be suspended by such second indictment, and shall be quashed." (Our italics.) Defendant

contends that the trial court "erred in permitting the state to prosecute under the indictment in this case for the reason that there was then and is now pending a second, subsequent indictment for the same offense." The court record shows that, when the two indictments were simultaneously presented in open court, ordered filed and made matters of record, the indictment under which defendant was tried was last presented, filed and recorded. In support of his plea in abatement, defendant offered to prove by the grand jury foreman, clerk and records that the grand jury had voted last upon the other indictment. The trial court refused to receive the evidence.

Defendant contends that the indictment last "found" against him could be proved only by the grand jury records or testimony of grand jurors "because no one else knew which indictment had actually been found first." That argument is based upon the assumption that, as used in Sec. 545.110, "found" means "voted upon." No doubt "found," as used in the statutes relating to grand juries and their proceedings (Ch. 540) means "voted a true bill" with the concurrence of at least nine grand jurors. Sec. 540.250. And see Shivers v. Territory, 13 Okla. 466, 471; People v. Colby, 54 Cal. 37, 38; State v. Johnson, 52 S. D. 273, 217 N. W. 205, 208.

However, a grand jury is also authorized to "present" or "return" the indictments "found." Secs. 540.240, 540.270, 540.290. "Indictments found" are "presented" by the foreman in open court, in the presence of the other grand jurors, filed and made matters of record. Sec. 540.270. Sec. 545.110 is not a part of Ch. 540, relating to grand juries and their proceedings. It is a part of Ch. 545 which, while containing several sections relating to the substance and form of indictments themselves, relates primarily to pre-trial proceedings after the indictment has been returned.

The purpose of Sec. 545.110 is to prohibit the trial of an accused under one indictment while another indictment (for the same offense or for the same matter) is "pending" by automatic "suspension" of one of the two "pending" indictments (see State v. Mayer, 209 Mo. 391, 107 S. W. 1085). No indictments "found" can be "pending" against an accused until they have been "returned" in open court. And the purpose of Sec. 545.110 is accomplished when the indictment first returned is suspended. Sec. 545.110, like the other sections in Ch. 545 in which "found" appears, is applicable only after the indictments have been returned. We see no sound basis for the assumption made by instant defendant that the legislature, in using "found" in Sec. 545.110, meant the voting of a true bill by the grand jury. We believe that the legislature must have used "found" in that section to mean "returned."

State v. Rhodes, 11 N. J. 515, 95 A. 2d 383, involved a statute requiring trial within a certain time after the indictment has been "found." (Compare Secs. 541.200, 541.210.) The court found no

merit in the state's contention that the indictment was "found" on the day it was voted by the grand jury. "The grand jury's action on that day was in no sense final and could have been changed at any time prior to the return of·the indictment. The return in open court constitutes the first objective act which renders the indictment effective under circumstances calculated to protect the proper legal interests of both the State and the defendant. * * * A contrary view would present evident dangers and enable impairment of the public policy underlying the statutory provisions prescribing periods of limitation in criminal cases. The State stresses that R.S. 2:183-2 uses the term 'found' but we are satisfied that there was no legislative purpose to attach legal significance to the action of the grand jury independent of the return of the indictment into court. In common parlance, an indictment is said to be found when it has been voted upon and properly returned to the court, and there are judicial decisions to that effect. See State v. Peloquin, 106 Me. 358, 76 A. 888 * * *; State v. Disbrow, 130 Iowa 19, 106 N.W. 263, 266 * * *; People v. Herrmans, 69 Misc. 303, 125 N.Y.S. 143, 148 * * *; United States v. Michael, 180 F. 2d 55 * * *; United States v. Knight, 339 U. S. 978, 70 S. Ct. 1023, 94 L. Ed. 1383 * * *; 27 Am. Jur. 605 * * *. There is no cause to believe that the term 'found' in R.S. 2:183-2 was used in any different sense and we have accordingly concluded that, in the instant matter, the indictment was found on November 19 [the day the indictment was returned]." 95 A. 2d l.c. 384[1, 2].

We construe "found" as used in Sec. 545.110 as meaning the "return" (in the sense of "presentment") of the indictments in open court. We hold that the section means that the indictment first returned "shall be deemed to be suspended" by the second indictment returned. Inasmuch as the instant court record shows that defendant was tried upon the indictment last returned, the trial court properly ▮▮▮ rejected the proffered evidence as to which of the two indictments was last voted a true bill by the grand jury.

▮▮ Sec. 495.130, applicable to Greene County, provides that no person over the age of sixty-five "shall be permitted to serve" as a juror. Mr. William Moon, one of defendant's counsel, began his voir dire examination of the panel by stating: "We have a law with reference to the age of persons who are qualified to serve as jurors. Are any one of you sixty-five years old or older?" Mr. Lynxwiler stated that he was sixty-six years old. Mr. Moon then stated to the court: "As I understand that statute, any person sixty-five, or older, cannot qualify to serve as a juror. The Court: As I understand the statute, any person over sixty-five can refuse to serve on a jury. It is a personal exemption and has to be claimed by the juror. Juror Lynxwiler: I will not claim it. The Court: He says he doesn't claim it. Mr. William Moon: I don't want to take issue with the

court, but the statute disqualifies them if they are over sixty-five * * *. The Court: That isn't my recollection of it. Do you have the statute? Mr. Williams [assistant prosecuting attorney]: If the court please, if we are going to have any arguments in connection with the law involved, may we have them either in chambers or outside the presence of the jury? The Court [to Mr. Moon]: Go ahead with your examination.'' Mr. Lynxwiler's name was on the jury list submitted to defendant who, using one of his peremptory challenges, struck the name.

Defendant argues that his counsel ''challenged'' Mr. Lynxwiler as disqualified to serve as a juror and that the court erroneously overruled his objection. He cites former Supreme Court Rule 1.34 (in effect at the time of the instant trial, December 1952) providing that in criminal cases ''it shall be sufficient to make objections in the manner provided for in civil cases'' in Sec. 510.210. That section is: ''Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor except it shall not be necessary to state grounds for objections for instructions; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.''

However, Mr. Moon's statements to the court went no farther than to suggest that Mr. Lynxwiler was not eligible to serve. They did not constitute a clear, definite ''challenge'' under Sec. 495.140. None of defendant's counsel complied with the court's request to be shown the statute to which Mr. Moon had referred. None joined in Mr. Williams' suggestion that any argument as to the law be had in chambers or outside the jury's presence. None thereafter requested the court to rule the matter or objected to Mr. Lynxwiler being on the jury panel. Defendant's counsel accepted the jury list without objection and exercised their peremptory challenges without prior complaint that Mr. Lynxwiler's name was on the list. In short, none of defendant's counsel ever again mentioned the matter until they filed defendant's new trial motion. Under such circumstances, we do not believe that defendant can properly challenge the verdict. See State v. Hart, 331 Mo. 650, 56 S. W. 2d 592, 594[4]; State v. Jenkins, (Mo. App.) 255 S. W. 338, 339[3]. The assignment is overruled.

Defendant's last assignment relates to the ''different manner'' in which the trial court ruled the argument of counsel for the respective parties as to one statement made by Mrs. Wolf, viz., as to the $15,810.17 item being included in the $24,268.16 item in Russell & Axon's May, 1952, ''Operating Costs'' for the Springfield work. As defendant concedes, neither the state's counsel nor defendant's

counsel was "wholly correct in his quotation of this testimony, as it appears in the transcript. The witness said, 'I am not sure; I suppose so.' Mr. Moon quoted her as saying she didn't know. Mr. Greene (an assistant prosecuting attorney) stated that she testified that one item included the other." In the first instance, the trial court ruled the objection of the state's counsel by telling defendant's counsel to "stay within the evidence" and the jurors that it was their duty to remember the testimony. In the other, the trial court ruled the objection of defendant's counsel by stating to the jury, "It's your duty to remember what the evidence was." In both instances, the ruling was followed by an expression by the objecting counsel of their belief that the jury would remember the evidence as to the particular matter. The assignment is overruled.

The judgment is affirmed. *Van Osdol, C.,* concurs; *Coil, C.,* dissents.

PER CURIAM:—The foregoing opinion by Lozier, C., is adopted as the opinion of the court. All the judges concur.

## On Motion for Rehearing.

HYDE, P. J.— In his motion for rehearing defendant contends that he complied with Section 510.210 in seeking disqualification of the juror over 65 years of age. (Statutory references are to RSMo. and V. A. M. S.) However, that section requires "that a party, at the time the ruling or order is * * * sought, makes known to the Court the action which he desires the Court to take." Counsel herein never did request the Court to take any action. He did make a statement about age qualifications of jurors but he did not say that he challenged this juror for cause (the procedure provided in Section 495.140 for making known to the Court any action desired by a party to be taken under Section 495.130); nor did he state in any other way any action that he *desired* the Court to take concerning this prospective juror. It is my view that it would not be in the interest of the administration of justice to hold that by merely making some statement in the record, without a request for any action by the Court (when affirmative action would be required to accomplish anything), a party can claim the Court erred in failing to take some action which was not requested. This would provide an easy method to ambush the trial judge by making it possible to claim error in matters as to which he was never asked to take any action and bring about reversals on all kinds of technicalities. Especially in such a matter as selection of jurors, if a party does not want a particular juror to serve he should be required to say so definitely. Certainly the sole fact alone of a juror being 66 instead of 64 is a

technicality not affecting the merits of the case or the fairness of the trial and is so recognized by Section 494.050.

Furthermore, I do not think the provision in Section 495.130 as to persons "over the age of sixty-five years" should be construed as an absolute mandatory disqualification. I think it might reasonably be construed as a directory provision, an exemption and not an absolute disqualification. I think this is true because it would be purely arbitrary and beyond the scope of any reasonable classification to make the age of 65 an absolute disqualification in only three counties in this state (Chap. 495) when it is only a ground of exemption throughout the state. (See Sec. 494.020; Sec. 496.100; Sec. 497.220; Sec. 498.110; also there is no limit at all on the age of trial judges in courts of record and appellate judges may serve to the age of 75, Art. V, Sec. 25, Const.) Many provisions stated in mandatory form are held to be directory when that is the reasonable construction. (For one example see State ex rel. Rogersville Reorganized School District v. Holmes, 363 Mo. 760, 253 S. W. (2d) 402.) I think that the motion for rehearing should be overruled. All concur.